IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                    Plaintiff,

        vs.                                                    CIVIL NO.   11-845 BB/LFG

704 HTL OPERATING, LLC and
INVESTMENT CORPORATION
OF AMERICA, dba MCM Elegante
Hotel,

                    Defendants.

## ORDER GRANTING IN PART
## AND DENYING IN PART REQUESTED RELIEF
## REGARDING THIRD-PARTY SUBPOENAS

### Introduction

THIS MATTER came before the Court on a telephonic hearing conducted on March 30, 2012, concerning two oral requests presented by Plaintiff Equal Employment Opportunity Commission ("EEOC").[1]  Present for the conference were Loretta F. Medina, counsel for the EEOC, and Ann Maloney Conway and Marian Burge Hand, counsel for Defendants.

### Background

EEOC is prosecuting this case on behalf of Safia Abdullah ("Safia") who is alleged to be the victim of religious discrimination and retaliation by Defendant MCM Elegante Hotel.  EEOC alleges, *inter alia*, that Defendants failed to accommodate Safia's religious beliefs and practices;

---

[1]In an effort to reduce costs and expedite the disposition of matters, both goals embraced by the Civil Justice Reform Act, 28 U.S.C. 471 *et seq.*, magistrate judges in this district will entertain telephonic hearings on oral requests.  The matters can be resolved immediately, without the need for briefing, and, thus, accomplish both goals contemplated by the CJRA.

failed to hire and/or discharged Safia because of her religion; and/or failed to hire and/or discharged Safia in retaliation for her opposition to discrimination.  As an alternative claim, the Commission alleges that Defendants constructively discharged Safia.  Defendants deny any wrongdoing. [Doc. 15, Joint Status Report.]

This discovery dispute concerns third-party subpoenas that Defendants served on Catholic Charities, a non-party to this litigation.  Catholic Charities is located in Albuquerque, New Mexico. A significant portion of Catholic Charities' volunteer work is to provide services to recent immigrants, as well as to immigrants who lack documentation permitting them to remain in the United States.  Among the services provided by Catholic Charities to its clients are legal assistance, housing, and access to governmental programs, including subsidized housing, food stamps, aid to families with dependent children, and employment placement.

Safia and her brother Abdulrahman Abdullah ("Abdulrahman") are immigrants from Turkey. Catholic Services provided services to Safia and her brother.  In the Joint Status Report [Doc. 15], EEOC identified an employee from Catholic Charities, Margie Lovato, as a witness who would testify as to a wide variety of issues relating to Safia.  Ms. Lovato's deposition was already taken.

### Third-Party Subpoenas on Catholic Charities

Defendants served third-party subpoena under Fed. R. Civ. P. 45 on Catholic Charities, seeking to permit inspection and obtain copies of all documents, memos, notes, correspondence, training materials or other materials in Catholic Charities' possession or files relating to Safia and her brother.  EEOC objects to the subpoenas and, in the alternative, seeks a protective order. Challenges to a third-party subpoena may be brought under Fed. R. Civ. P. 45(c)(3)(A)(iii).  Neither the brother of Safia nor Catholic Charities objected to the subpoenas served on Catholic Charities.

## Discussion

The Court advised counsel that only the recipient of a subpoena may move to quash unless the movant is asserting privilege.  EEOC is not the recipient of the subpoena, and the recipient, Catholic Charities has not moved to quash.  *See, e.g.,* Steven Baicker-McKee, William M. Janssen & John B. Corr, <u>Federal Civil Rules Handbook</u> (2012 ed.).  *See also* 9A Charles Alanwright, Arthur R. Miller and Edward Cooper, <u>Federal Practice and Procedure</u>, § 2459 (3d Ed. 1998).  The Court inquired of EEOC's counsel as to its standing to challenge the subpoena vis-a-vis Abdulrahman, the brother of the charging party.  EEOC confirms that it is not counsel to the brother, and that there is no administrative matter pending before the Commission which will ripen into a potential lawsuit.  EEOC has no standing to challenge the subpoena on behalf of an individual who it does not represent.

Baicker-McKee notes that the failure to file a motion to quash may constitute a waiver of any objections to the subpoena.  <u>In re Flat Glass Antitrust Litigation</u>, 228 F.3d 83, 90 n. 12 (3d Cir. 2002).  As Catholic Charities did not move to quash, it has waived any challenge.

EEOC does, however, have standing to raise privilege or privacy issues on behalf of Safia.  This point was made clear in a recent decision brought by the same plaintiff, EEOC.  In <u>EEOC v. Original Honeybaked Ham Co. of Georgia</u>, 2012 WL 934312 (D. Colo. Mar. 19, 2012) (unpublished), the EEOC similarly sought to quash a number of subpoenas served on employers and prior employers of the plaintiff class, seeking a variety of information, including salary and personnel records, as well as medical information.  As is true here, EEOC, in <u>Original Honeybaked Ham,</u> came before the court seeking the motion to quash.  The District Court found that EEOC lacked standing, except as to privilege or to assert the privacy of the aggrieved employees which EEOC represented.  <u>Id.</u> at *2.

3

So, too, as EEOC is not the recipient of the subpoena relating to Abdulrahman, it cannot challenge the subpoena as it relates Abdulrahman's interests.

EEOC argues, however, that it has standing to assert privilege or privacy concerns relating to Catholic Charities' files/information concerning Safia.   The Court agrees.   In Original Honeybaked Ham, the court held:

> Regarding the remaining subpoenas, Defendant argues the Plaintiff has no standing to seek a protective order or to quash these third-party subpoenas.  In this district, a party has no standing to quash a subpoena served on a third party, except as to claims of privilege or upon a showing that a privacy issue is implicated.  Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1977) ("[a]bsent a specific showing of privilege or privacy, a court cannot quash a subpoena duces tecum"); *see also* Broadcort Capital Corp. v. Flagler Secs., Inc., 149 F.R.D. 626, 628 (D. Colo. 1992).  Objections unrelated to a claim of privilege or privacy interests are not a proper basis upon which a party may quash a subpoena.  Windsor, 175 F.R.D. at 668; *see also* Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co. of New York, 519 F. Supp. 668, 680 (D. Del. 1981) (movant lacks standing to raise objections unrelated to any right of privilege).  In this case, the Plaintiff EEOC argues that it has standing to protect the privacy of aggrieved employees it represents.  The Court agrees that Plaintiff enjoys this limited standing upon which to challenge the Defendant's third-party subpoenas.

Id. at *2.

EEOC's counsel has reviewed the entirety of Catholic Charities' records relating to the charging party, Safia, and discusses at least four categories of documents.[2]  The first category concerns Safia's application for entry into the country and, what EEOC's counsel initially identified was an authorization for employment.  The Court inquired whether the application for entry into this country contained any explanation as to the reasons for immigrating to the United States.

---

[2]EEOC was asked about documents in Abdulrahman's file that may raise privacy issues, but EEOC did not know, as that file was not reviewed.  Then, EEOC only speculates or guesses that there may be something in his file that implicates a privacy right of say, Safia.

For example, if Safia asserted that she was being persecuted in her country, was a victim of physical or sexual assault, was seeking political asylum because of threats of bodily harm or retaliation against her or her family for having opposed governmental interests in her homeland, her explanations may well be relevant to a determination of whether any psychological injury which Safia now claims and attributes to Defendants' conduct may be due to those conditions rather than to her employment.  A party may attribute her own mental or emotional injury to an employer's conduct.  However, evidence of other traumatic events or stressors in that party's life, caused by sources entirely distinct and separate from an employer's conduct, may well be used to offset a claim for damages or to demonstrate that there are other life stressors that caused or contributed to a plaintiff's present emotional harm.

As EEOC has made a claim on Safia's behalf for emotional harm injuries, the Court determines that the document which includes Safia application for entry into this country and work authorization is relevant to the claims and defenses under Fed. R. Civ. P. 26, is discoverable, and is not covered by privilege.

A second group of documents in the Catholic Charities' files relating to Safia concern Catholic Charities' efforts to assist Safia with food stamp applications, financial support, housing, public transportation, vouchers and other humanitarian aid.  None of those documents relating to Catholic Charities' work are relevant to issues in this case and do not come within Rule 26. Therefore, this group of documents are protected as private documents.  Catholic Charities need not produce those documents.

A third category of documents included in Catholic Charities' file relating to Safia includes efforts or assistance to obtain employment and work placement.  As Safia has a duty to mitigate her damages, Defendants are free to explore whether opportunities for other employment have been

provided to Safia and whether she has acted on those opportunities as part of her mitigation responsibilities.  So, too, information concerning other employment is relevant to determine if other employers have asserted safety concerns relating to the use of a hijab at the place of work.

The Court determines that Catholic Charities documents relating to other employment opportunities, job referrals, and results of potential job placement are relevant to the claims and defenses, under Rule 26, and are not barred under any privacy exception.  Catholic Charities is directed to produce those documents.

The last category of documents relating to Safia, as identified by EEOC's counsel's inspection of the Catholic Charities' file, include notations about medical care or appointments. EEOC argues that medical care documents are privileged.  Indeed they are, save for the fact that EEOC placed Safia's medical condition at issue by the demand for damages related to emotional harm.

In LaFave v. Symbios, 2000 WL 1644154, at *4 (D. Colo. Apr. 14, 2000) (unpublished), an employment discrimination case, the court determined that when a plaintiff makes a claim for pain, suffering and emotional distress damages, the plaintiff places a mental condition in controversy. While medical records are generally privileged, when a party places a condition at issue as an element of a claim, the plaintiff may not preclude defendants from obtaining discovery of health records.  In LaFave, the plaintiff asked for damages for pain and suffering, embarrassment and humiliation.  While she did not assert a separate cause of action for intentional or negligent infliction of emotional distress, the court nonetheless found that plaintiff's medical records were subject to production and directed that medical and psychological records be produced.  Id.

The same is true here.  By making the requests for the kinds of damages EEOC is seeking, it placed Safia's medical condition at issue. Moreover, medical records often contain references by

a patient to a doctor attributing conditions, i.e., anxiety, stress, depression, to a wide variety of factors, including illness, marital discord, financial difficulties, interpersonal relations, etc. Should Safia's medical records show that she was suffering from emotionally debilitating conditions--stress, anxiety, pain and suffering--attributed to other sources, it is perfectly appropriate for Defendants to argue that the cause of whatever condition is now present may well be attributed to these other sources.

Accordingly, the Court directs Catholic Charities to provide those records relating to Safia Abdullah's medical information.

The Court grants EEOC's alternate relief, a protective order. All documents produced pursuant to the subpoena are protected. They are to be used only for purposes of this litigation. At the conclusion of the litigation, Defendants shall return to Plaintiff all documents and all copies of documents secured by the subpoena. If any of the documents are provided to an expert, at the conclusion of this case, the expert is required to return all documents and copies of the documents to Plaintiff.

IT IS SO ORDERED.

Lorenzo F. Garcia
United States Magistrate Judge

7