IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                Plaintiff,

    vs.                                              CIVIL NO.   11-845 BB/LFG

704 HTL OPERATING, LLC and
INVESTMENT CORPORATION
OF AMERICA, dba MCM Elegante
Hotel,

                Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO COMPEL RULE 35 EXAMINATION

THIS MATTER is before the Court on Defendants' Motion for Order Compelling Independent Medical Examination of Plaintiff [Doc. 70]. Plaintiff Equal Employment Opportunity Commission ("EEOC") opposes the motion [Doc. 73]. No reply is necessary. The Court considered the motion and EEOC's response, and for the reasons hereafter stated, the Court finds that the motion is well-taken and will be granted.

### Background

EEOC brings a Title VII action against Defendants on behalf of Safia Abdullah ("Abdullah"). Abdullah is an Iraqi immigrant, who fled her homeland and immigrated to the United States. [Doc. 71, Ex. B, Abdullah Dep., pp., 13-14, 15 (lines 22-25), p. 16 (1)]. Abdullah testified that her family was at risk and that all of their lives were in danger while living in Iraq. [Id.].

Regrettably, her entire family and other loved ones, including her boyfriend in Turkey, were unable to leave, and, thus, Abdullah's mother and boyfriend remained behind. [Doc. 71, Ex. A, Dr.

Gray Dep., pp. 33-34].  After fleeing Iraq and crossing the border into Turkey, Abdullah sought and obtained the assistance of Albuquerque's Catholic Charities, and was able to immigrate to the United States where she resettled, also with the help of Catholic Charities. [*See* Doc. 1, Complaint].

During the resettlement efforts, Catholic Charities referred Abdullah to Defendants for employment placement. [Doc. 1, ¶ 17].  Defendants contend that they have a long and stellar history of civic, charitable and educational involvement, including contributing to women's shelter programs and programs for at-risk children.  They actively partner with the Catholic Charities immigration placement program, and have provided jobs to 152 immigrants–a significant portion of whom are Muslim.  [June 4, 2012 disclosures by Defendants at Rule 16 conference].

The present lawsuit concerns EEOC's claims that Defendants would not let Abdullah work because she was wearing a hijab, a traditional Muslim headdress intended to cover a woman's hair, would not accommodate her religious needs, and retaliated against her.  Defendants, on the other hand, dispute EEOC's allegations, and state that an offer of employment was extended to Abdullah, subject to background checks and inspection of documents authorizing employment.  Abdullah was given a date on which her job would commence. [Doc. 24, Amended Joint Status Report.]

Subsequent to hiring Abdullah in the housekeeping department, Defendants contend that its executive housekeeper expressed concern that Abdullah's hijab was long and could pose a safety hazard, interfere with Abdullah's peripheral vision, be a tripping or snagging risk, and might violate Defendants' workplace dress rule code.

The parties dispute what occurred thereafter, with Defendants contending that they proposed a number of alternatives to Abdullah, including tying back her hijab, pinning it up, or wearing a shorter hijab, or a boma, which is a skullcap covering the head and is an acceptable alternative to

the hijab.  Defendants contend that Abdullah was going to consider the options and the next thing they learned was that she was not going to return–alleging discrimination.

Abdullah, on the other hand, contends that it was she who sought reasonable accommodations and made offers to tie back her hijab, pin it up, tuck it in, or wear a boma in lieu of the hijab.  She asserts that Defendants rejected all her proposed alternatives.  Abdullah alleges that Defendants offered no other alternatives and withdrew their earlier offer of employment because of Abdullah's religious headdress.

On behalf of Abdullah, EEOC seeks substantial damages for the above alleged violations of Title VII.

> Ms. Abdullah should be made whole through an award of back pay with prejudgment interest, compensation for past and future pecuniary losses, and compensation for past and future nonpecuniary losses resulting from Defendants' unlawful employment practices, including but not limited to, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

[Doc. 24, at 5.]

## Present Motion

Defendants seek an independent Rule 35 evaluation of Abdullah before Dr. Samuel Roll, scheduled for August 10 and 11, 2012, or, alternatively, for August 17 and 18, 2012. [Doc. 70]. Defendants argue that Abdullah placed her mental, emotional and psychological condition at issue; that she has arranged, through EEOC, the services of a treating expert witness to testify as to significant mental injury; and, that causal connection, requiring an expert opinion, is necessary for the fact finder to determine issues in this case.  Defendants also request that Abdullah sign a medical release to allow her treating psychologist, Dr. Gray, to provide "test results, raw data of any testing,

. . ., all data from structured interviews, unstructured interviews, Rorschach, MMPI-2, Behavioral Health Measure-20, Sentence Completion Test and any other test or evaluation tool, and that this information be provided to Dr. Roll prior to the scheduled IME." [Doc. 70, at 3].[1]

In opposition, EEOC argues that Defendants did not meet their burden to obtain a Rule 35 IME or did not demonstrate good cause for the examination, that EEOC has not made claims for intentional or negligent infliction of emotional distress, that no "unusually severe" psychiatric disorder or injury has been diagnosed, that no expert testimony will be offered other than testimony by a treating psychologist, that Defendants failed to establish that Abdullah has any mental condition "in controversy," that Defendants did not establish any other good bases for the requested examination, and that Defendants already obtained or could obtain the requested information by other less intrusive means. [Doc. 73.]

EEOC also protests that Defendants failed to timely identify or request an extension of time to identify any medical expert.  Thus, they should not be allowed to benefit from their failures by being permitted to conduct an IME. [Doc. 73, at 15.]

## Analysis

I.      Applicable Legal Standard

Whenever the physical or mental condition of a party is in controversy, the Court may require the party to submit to a physical or mental examination.  Fed. R. Civ. P. 35(a); Schlagenhauf

---

[1]Pursuant to the district's local rules, when a party seeks damages for mental, physical or emotional injury, the party seeking compensation must disclose the identity of each and every healthcare provider which the person has seen in the five years preceding the incident which gives rise to the lawsuit; the healthcare provider should be identified by name, address and telephone number; and the claimant must execute physical and psychological record release forms.  These disclosures are automatic.  Thus, under the local rules, EEOC should have already provided this information to Defendants.  Abdullah is required to execute a medical release form within 10 days after entry of this Order so as to allow Dr. Gray to release the information sought by Defendants.

v. Holder, 379 U.S. 104, 111, 85 S. Ct. 234, 238 (1964).  Unlike other formal discovery devices which can automatically be utilized by a party under the federal rules, a request under Rule 35 requires court authorization and is given only in instances where a party's physical or emotional condition is at issue, and the requesting party is able to demonstrate good cause.  Id.  The reason for imposing strict requirements stems from the Court's recognition of a person's right of privacy.

> No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

Union Pac. R. Co. v. Botsford, 141 U.S. 250, 251-52, 11 S. Ct. 1000, 1001 (1891).  While the Court recognizes Abdullah's right of privacy, the Court concludes, for the reasons stated more fully below, that Defendants adequately satisfied the Rule 35 requirements for an IME under the circumstances of this case.

In summary, there are two prerequisites for an order compelling submission to an independent medical examination ("IME"): 1) the party's mental condition is "in controversy" and 2) "good cause" exists for the requested examination.  In Schlagenhauf,

> the Supreme Court stated that the "in controversy" and "good cause" requirements of Rule 35 would not be satisfied by conclusory allegations contained in pleadings, or by assertions of mere relevance to the case. Rule 35 requires an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.

LeFave v. Symbios, Inc., No. CIV.A. 99–Z–1217, 2000 WL 1644154, at *4 (D. Colo. Apr. 14, 2000) (unpublished) (citing Schlagenhauf, 379 U.S. at 118).

In LeFave, the district court denied the request for a Rule 35 examination but observed that good cause would exist for an IME when a plaintiff alleged a specific mental or psychiatric injury

or disorder, or claimed unusually severe emotional stress, and offered expert testimony in support of the claim for emotional distress.  In LaFave, unlike the present matter, the plaintiff did not offer expert testimony in support of the emotional distress allegations.

In Fox v. Gates Corp., 179 F.R.D. 303 (D. Colo. 1998), the district court similarly denied a request for an IME, explaining that –

> [t]he majority of courts . . . will not require a plaintiff to submit to a medical examination unless, in addition to a claim for emotional distress damages, one or more of the following factors is also present: (1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder; (3) plaintiff claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of her claim for emotional distress damages; and (5) plaintiff concedes that her mental condition is in controversy.

Id. at 307.

The district court in Thiessen v. Gen. Elec. Capital Corp.,178 F.R.D. 568, 569-70 (D. Kan. 1998), determined that the Rule 35 requirements were met and ordered an IME, notwithstanding the plaintiff's assertions that no expert testimony would be offered.  The court correctly observed that when a plaintiff makes a "garden variety" distress claim which amounts to no more than an attempt to recover for generalized insult, hurt feelings or lingering resentment, a plaintiff's mental condition is not sufficiently in controversy to justify an intrusive Rule 35 examination.  However, when a plaintiff asserts a "more particularized mental or emotional injury," the claimed condition is in controversy and the defendant is entitled to conduct its own examination and evaluation of the claim. Id. at 569.

In Thiessen, the court identified excerpts from the plaintiff's deposition alleging emotional distress and injury from Defendants' alleged misconduct.  Id. at 570.  These excerpts are similar to testimony provided by Abdullah's treating psychologist's deposition testimony, where Dr. Gray

described diagnoses and emotional injuries that he attributed to the alleged misconduct of these Defendants.  (*See* discussion *infra*.)  The <u>Thiessen</u> court collected a number of cases addressing this same issue where most courts ordered IMEs.

> <u>Dahdal v. Thorn Americas, Inc.</u>, No. 97–2119–GTV, 1998 WL 37532, at *2 (D.Kan. Jan. 28, 1998) (granting motion to compel mental examination where plaintiff's claims of emotional distress "are more extensive than what one would call a simple 'garden variety' of emotional distress"); <u>O'Sullivan v. State of Minnesota</u>, 176 F.R.D. 325, 328 (D.Minn.1997) ("[A] plaintiff places a mental condition in controversy when 'a claim of mental or psychiatric injury' is alleged, ... mere allegations of 'mental pain and anguish' do not suffice.") (citations omitted); <u>Chaparro v. IBP, Inc.</u>, No. 93–2200–GTV, 1994 WL 714369, at *3 (D.Kan. Dec. 7, 1994) ("The mere assertion of a claim for emotional distress does not of itself open the door for a motion to compel submission to a mental examination."); <u>Cody v. Marriott Corp.</u>, 103 F.R.D. 421, 423 (D.Mass.1984) ( "[I]t is clear that where ... a plaintiff refers to specific mental and psychiatric injuries, the plaintiff is affirmatively placing in controversy a mental condition. Under those circumstances, it is appropriate for a court to order an examination." *See also* <u>Sabree v. United Brotherhood of Carpenters Local No. 33</u>, 126 F.R.D. 422, 426 (D.Mass.1989) (denying motion to compel plaintiff's psychotherapist's records under Rule 34 where plaintiff had made a " 'garden-variety' claim of emotional distress, not a claim of psychic injury or psychiatric disorder resulting from the alleged discrimination.").

<u>Id.</u> at 570-71.

II.     Discussion

The crux of Defendants' request for a Fed. R. Civ. P. 35 examination is whether EEOC's claims on behalf of Abdullah fall into the category of "garden variety" emotional distress claims as recognized by the district court in <u>Thiessen</u>, or whether Abdullah is asserting a more particularized mental or emotional injury.

The Court concludes that the majority the pertinent factors set out in <u>Fox v. Gates</u> are present here and, in addition, that the EEOC's claims do not fall into the "garden variety" category of

emotional distress claims.  For example, in the complaint, the EEOC alleges emotional distress injuries, on behalf of Abdullah.  [Doc. 1, ¶¶ 70, 79, 86 ("suffered and is suffering emotional distress")].  In the prayer for relief, Plaintiff seeks an order from the Court that "would make whole Abdullah" –

> by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses, in amounts to be determined at trial.

[Doc. 1, at 12, ¶ F.] In the amended Joint Status report, the EEOC again states that it seeks damages that include, but are not limited to, "emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial." [Doc. 24, at 5.] While EEOC also seeks injunctive relief, the Court finds that the bulk of the damages sought on behalf of Abdullah are for emotional harm.  Moreover, the EEOC claims that the damages for the emotional injury should be substantially compensated.

In addition to the damages that EEOC seeks on behalf of Abdullah, the commission arranged for an expert treating psychologist to present evidence that Abdullah suffered from a significant, more particularized emotional injury.  The alleged injury or injuries are specifically diagnosable, are listed in the standard diagnostic manual, DSM-IV, and, thus, are allegedly unusually severe.  It is beyond dispute that EEOC placed Abdullah's mental and emotional condition at issue.

The EEOC argues that the only expert testimony is coming from a treating psychologist, rather than a retained expert.  The fact that Dr. Gray is a treating psychologist, as opposed to a specially retained expert, is a distinction without a difference.  Dr. Gray will be offered as an expert under Fed. R. Evid. 702.  He will provide opinion evidence based on his knowledge, skill,

experience, education and training.  Dr. Gray is not a lay witness who will simply recount the "who, where and what," but, as an expert, will offer opinions on the "why."

The EEOC further contends that the "expert testimony" factor noted in <u>Fox v. Gates</u> weighs against Defendants.  This is incorrect.  It is clear that EEOC is offering expert testimony on the issue of Abdullah's mental and emotional condition.   Thus, the expert testimony factor supports Defendants' position.

EEOC also urges the Court to find that Abdullah's mental and emotional condition is not "in controversy." [Doc. 73, p. 9].  However, the Court concludes that the claims pressed by EEOC directly place her condition at issue.  Thus, the second <u>Fox</u> and <u>LeFave</u> factor is present.

EEOC's claim on behalf of Abdullah is not for routine or generalized "insult, hurt feelings or resentment," but, rather, allegedly arises under a specifically diagnosable condition identified in the DSM-IV. [Doc. 71, Ex. A, at pp. 34-35].  Indeed, as discussed above, EEOC intends to present the testimony of Dr. Gray, who will testify as to his treatment of Abdullah, her diagnosis, and the alleged severity of Abdullah's mental and emotional condition, which Abdullah attributes to the alleged retraction of an employment offer. [*See* Doc. 73, at 3.]

Dr. Gray believes that Abdullah is "severely distressed" and has indications of bi-polar and eating disorder issues, [Doc. 71, Ex. A, p. 41 (17-21), p. 50 (24-25), p. 51 (1)], although he did not diagnose Abdullah as having an eating disorder.  [<u>Id.</u>, p. 51 (18-21)].  Dr. Gray diagnosed Abdullah as suffering from a condition identified in the DSM-IV diagnostic manual as "social phobia, general" [<u>id.</u>, p. 34 (23-25)], and contends that Abdullah "developed a pretty serious level of anxiety . . . ." [<u>Id.</u>, p. 35 (24-25)].  In considering her Behavioral Health Measure, Abdullah scored in the "severe range" of the anxiety scale.  [<u>Id.</u>, p. 41 (15-21)].  He testified that "her social activity outside of her home really has not returned to what was normal for her." [<u>Id.</u>, p. 36 (20-21)].  Dr. Gray

testified that Abdullah had "episodes of panic," [id., p. 37 (20-21)], and he is tracking Abdullah's level of depression to determine if he should give Abdullah a secondary diagnosis of depression or, perhaps, an additional diagnosis of depression, [id., p. 39 (17-20)], both of which are listed in the diagnostic manual.

Dr. Gray's evaluation contradicts EEOC's contention that Abdullah's diagnosable conditions are not severe. [See Doc. 73, p. 8].  It is clear that Abdullah's mental and emotional condition is, indeed, specific, significant, and diagnosable.

Moreover, Dr. Gray cites the present employment dispute as the genesis of Abdullah's emotional problems. [Doc. 73-4, Gray Dep., p. 82 (17-25), p. 83 (1)].  Curiously, Dr. Gray did not attribute any portion of Abdullah's present emotional condition to the life stressors that Abdullah experienced before Defendants' offer of employment.  For example, she was compelled to flee her homeland under threats of extortion and death.  She was and remains separated from loved ones, including parents and her boyfriend.  She was torn away from her homeland, her customs, friends and comfortable environment.  She was resettled in a country far away and light years different from that which she has known.  She is now separated from the familiar and the comfortable.  These realities, however, played no role in Dr. Gray's evaluation of Abdullah's emotional problems or alleged injuries.

To the contrary, Dr. Gray relied on Abdullah's self reporting and attributions of her present emotional and psychological condition to the alleged denial of employment.  "I asked her if these symptoms that she reported, if they had existed before the incident, and I think she said no." [Doc. 71, p. 40 (8-10)].  In determining whether other life stressors affected her condition, for example, the separation from her boyfriend for a long time, Dr. Gray stated:

A.   I asked her a couple of questions about it, and I don't really have a clear recollection except that I know that they've been boyfriend and girlfriend for quite a long time.  And the rest, my memory is a little foggy about it.

Q.   All right.   Did it have any significance in your evaluation of Ms. Abdullah?

A.   No.

[Id., p. 34 (12-19)].

The fact that EEOC intends to rely on a treating psychologist's expert above-described testimony to show that Abdullah's emotional distress or emotional injuries were caused by alleged discrimination or retaliation by Defendants supports an order, in accordance with Rule 35, directing Abdullah to submit to an IME.  Plaintiff's argument that Defendants seek only to conduct a Rule 35 IME because they failed to identify any medical expert does not convince the Court otherwise.  A decision to conduct an IME does not necessarily implicate a decision not to call an expert.  In other words, a party is permitted to use the results of an IME to challenge the testimony of the other party's treating psychologist, without the need to hire an independent medical expert.

## Conclusion

A party may not place a condition at issue and then deny the opposing party access to basic information which may be used to either support and confirm the diagnosis, or to challenge and repudiate it.  In this case, the Court finds good cause for ordering the Rule 35 examination of Abdullah.   See Simpson v. Univ. of Colorado, 220 F.R.D. 354, 362 (D. Colo. 2004) (good cause existed for permitting proposed mental examination because, without the examination, the defendant would have been limited to cross examining the evaluation of plaintiff's expert).

In addition, the Court directs Plaintiff to produce all the materials sought by Defendants, including tests, test scores, notes, raw data, date from interviews, including all test interviews . Those materials must be provided to Defendants within ten days after entry of this Order.  Use of the materials provided is limited to this case and, upon the completion of this case, all materials obtained from Dr. Gray should be returned to him.

Abdullah is directed to appear for the two-day evaluation on August 10 and 11, 2012, or August 17 and 18, 2012, to be conducted by Dr. Roll.  The parties should confer in determining the time and place for the IME.

IT IS THEREFORE ORDERED that Defendants' motion to compel a Rule 35 examination of Abdullah [Doc. 70] is GRANTED.

_____
Lorenzo F. Garcia
United States Magistrate Judge

12