**IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,**

           **Plaintiff,**

**vs.**                                 **No. 1:11-CV-845-JCH/LFG**

**704 HTL OPERATING, LLC, and
INVESTMENT CORPORATION OF
AMERICA d/b/a MCM ELEGANTE HOTEL,**

           **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on four motions for partial summary judgment

brought by Investment Corporation of America ("ICA") and 704 HTL Operating, LLC ("704-

ABQ" or "the hotel") (collectively, the "Defendants").  (Docs. 83, 84, 85, 86).  In the underlying

action, Plaintiff Equal Employment Opportunity Commission ("EEOC") brings claims for

religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e, et seq., on behalf of charging party Safia Abdullah, who contends that she

was wrongfully terminated by Defendants after declining to remove her *hijab*, a traditional

headscarf worn by Muslim women.  On the instant motions, Defendants contend that (1)

Plaintiff fails to assert a prima facie case of religious discrimination; (2) Defendants are entitled

to a presumption that they did not act with discriminatory animus towards Abdullah, pursuant to

the "same actor" doctrine; (3) Defendants had legitimate, non-discriminatory reasons for

discharging Abdullah; and (4) Plaintiff cannot establish punitive damages.  The Court, having

considered the motions, briefs, exhibits, and the relevant law, and being otherwise fully

informed, finds that Defendants' motions are not well-taken and should be denied.

**FACTUAL BACKGROUND**

Plaintiff EEOC brings the instant action on behalf of Safia Abdullah, an Iraqi-born refugee and practicing Muslim.  At the heart of this case is Abdullah's religious practice of wearing a hijab, or headscarf, which, Plaintiff claims, led Defendants to rescind their offer of employment to her in violation of federal anti-discrimination law.

**Safia Abdullah's Practice and Manner of Wearing Hijab**

In accordance with her religious beliefs, Abdullah wears a hijab covering her hair and neck while out in public.  Abdullah considers the wearing of a hijab by female Muslims to be required by the Quran, which, she asserts, dictates that women should "guard their modesty . . . and draw their scarf around them to avoid displaying their beauty."  (Doc. 100 Ex. 1 Abdullah Dep. at 41:3-41:5).  Abdullah testified that she makes no exception to her policy, and wears her hijab whenever she is out in public and whenever her family entertains male guests outside her immediate family in their home.  She further testified that she wears a tight-fitting inner cap under her hijab called a *bona,* that secures her hair in place.

**Abdullah Obtains Interview at 704-ABQ**

In early 2010, Abdullah and her brother, Abdulrahman, began seeking employment pursuant to a program at Catholic Charities of Central New Mexico, which assists refugees and asylees with job placement in the Albuquerque area.  With the assistance of Margie Lovato, then the Job Developer at Catholic Charities, the Abdullahs obtained interviews for housekeeping positions at 704-ABQ, which does business as the MCM Elegante Hotel of Albuquerque.[1]

---

[1]The business relationship between 704-ABQ and its Co-Defendant and majority owner, ICA, is set forth in detail in the Court's Memorandum Opinion and Order addressing the parties'

704-ABQ is one of several MCM Elegante Hotels located throughout the Southwest.  As part of its decor, each hotel features a concrete block in which the biblical Ten Commandments are etched.

### Abdullah Wears Hijab to Interview with Housekeeping Director Terrie Young

On or about March 3, 2010, Abdullah was interviewed for a housekeeping position at 704-ABQ by Terrie Young, the hotel's Director of Housekeeping.  Abdullah wore her hijab at the interview.  It is undisputed that Young conducted the interview alone, and that neither she, nor anyone else at 704-ABQ to whom Abudullah was introduced on the day of her interview, asked her about or otherwise expressed an opinion regarding her hijab at the time.

On a date not set forth by the parties, Margie Lovato, Abdullah's liaison at Catholic Charities, notified her that the hotel was extending her an offer of employment.

### Extent of Young's Authority

It is undisputed that the General Manager of 704-ABQ was required to sign off on any new hire by the hotel.

### Abdullah Wears Hijab to Work at 704-ABQ, Rejected By Young

On March 15, 2010 Abdullah  – wearing her hijab – reported for duty to the housekeeping department of 704-ABQ.  The order in which ensuing events occurred and the content of Abdullah's conversation with her new supervisors is disputed by the parties.  According to Abdullah, upon her arrival, Young looked at her and repeatedly told her to "take that off," while pointing at her head.  Abdullah asked "why," and began crying when Young brusquely informed her that she could not work if she did not remove her hijab.

---

cross-motions for summary judgment on the issue of integrated enterprise.  (Doc.?)

Plaintiff contends that Abdullah was wearing her hijab tucked into a turtleneck sweater when she reported for work, and was further secured by both the inner bona and straight pins.

### HR Manager Slough Cites Corporate Policy of Not Offending Patrons for Decision

Abdullah alleges that she then asked to speak to a higher-level employee, 704-ABQ Human Resources Manager Luanne Slough.  Slough had previously met Abdullah when she delivered new-hire paperwork for Abdullah to complete at her job interview, and was aware that she was Muslim.

It is undisputed that, upon her arrival, Slough commenced by asking Abdullah to remove her hijab, and that Abdullah demurred, emphasizing that the headscarf was required by her religion.  Abdullah testified that Slough then informed her that "the corporate office won't allow me to work with my head cover on me.  And she said they have customers from different religion[s] that come to their hotel, and they don't want me to show that – my religion, to show that I'm Muslim."  (Doc. 83 Ex. 1 Abdullah Dep. at 71:7-71:11).  As the conversation wore on, Abdullah testified that she became increasingly distraught, and ultimately offered to compromise and wear only the inner, *bona* portion of the hijab, "which is a cap on my [ ] head" that keeps the scarf portion in place.  *Id.* at 69:21-69:23.  She testified that Slough refused to allow her to wear the bona as a substitute head covering.

Abdullah asked Slough to call Lovato, her contact at Catholic Charities.  Lovato testified at her deposition that Abdullah "called me crying from [Slough's] office . . . saying that she was not allowed to wear the [hijab] around her head and neck.," and that her offer to "wear a shorter one" had  been rejected.  (Doc. 100 Ex. 2 Lovato Dep. at 35:2-35:7).  According to Lovato, after Abdullah passed the phone to Slough, Lovato asked her why Abdullah could not wear a hijab or bona while performing her duties.  Lovato testified that Slough's "exact" response was that "'It's

4

not my fault.  It's the corporate office.'" (*Id.* at 35:19-35:20; 39:3-39:25).

Lovato and Abdullah testified that Slough never mentioned safety concerns as the reason why Abdullah could not wear a hijab or bona.

After the telephone call concluded, Abdullah and Slough resumed their dialogue about the hijab.  According to Abdullah, Slough continued to reject the bona as a substitute hair covering because it did not allow any hair to show, and proceeded to demonstrate with a folded tissue what Slough thought might be an acceptable look to the ICA corporate office; she then offered to take Abdullah's photo with her hijab styled in such a manner and send it to the corporate office.  Abdullah rejected Slough's proposed styling, because it was "just too small . . . . showing my hair from the front and back," and not in keeping with her religious requirements. (Doc. 83 Ex. 1 Abdullah Dep. at 75:11-76:25).[2]

Slough eventually escorted Abdullah from the hotel premises.  It is undisputed that Abdullah did not perform any duties for 704-ABQ.

### Acceptable Methods of Securing Hair Among 704-ABQ Housekeeping Staff

Housekeepers employed by 704-ABQ are permitted to have long hair, as long as it is

---

[2]Defendants dispute Abdullah's and Lovato's testimony, and contend that (1) Abdullah's hijab was worn loosely when she reported for duty; (2) Young and Slough objected to the hijab solely on the grounds that it violated housekeeping safety policy; (3) neither Young nor Slough expressed any concern about hotel guests' disapproving of Abdullah's displaying her Muslim beliefs; (4) Abdullah never offered to wear her *bona* alone; and (5) no one at ICA was contacted by 704-ABQ seeking guidance about the problem posed by Abdullah's wearing a hijab.

With respect to Defendants' final contention, the Court notes the existence of a factual dispute created by Defendant employees' different recollections of the events in issue. 704-ABQ's Slough testified that she contacted ICA H.R. Manager Tanya Cooper on the day of Abdullah's alleged termination seeking guidance, and learned that Cooper "felt the same way that I did . . . she was concerned that a loose garment could potentially be a safety issue."  (Doc. 100 Ex. 4 Slough Dep. at 145:7-145:9).  Cooper, however, testified that she never spoke with Slough about Abdullah before Abdullah filed an EEOC complaint against Defendants.  (Doc. 100 Ex. 7 Cooper Dep. at 119:21-120:10).

contained and not worn loose.  Slough testified at her deposition that housekeepers with long

hair were permitted to clip their hair back, secure it back with headbands, tie it back, tuck it in

their smocks, wear hairnets, or wear bandanas.  Consuelo Amezaga, Executive Housekeeper for

the hotel, testified that the hotel has maintained a policy requiring housekeepers to wear a hairnet

for past three years, but that housekeepers are permitted to wear bandanas or tight-fitting caps in

lieu of hairnets.  Amezaga further testified that the hotel currently employs a housekeeper who

wears a cap similar to a bona who had not suffered any security incidents.

ICA Senior Vice President Monty Pulliam testified at his deposition that he was unaware

of any business reason why 704-ABQ could not have worked with Abdullah to arrive at a

reasonable accommodation of her religious practices that would have allowed her to work as

housekeeper.

### Extent of Slough's Authority

Defendants do not specifically dispute that Slough, as 704-ABQ's Human Resources

Manager, did not have authority to make decisions regarding the hiring and termination of

employees.

### Extent of Slough's Training in Federal Anti-Discrimination Law

It is undisputed that Slough attended at least one seminar on Title VII's prohibition

against employment discrimination, as well as additional training on "Hiring and Firing Within

the Law," which included a discussion on dealing with employee requests for religious

accommodation.  *See* Doc. 100 Ex. 4 Slough Dep. at 10:24-11:7; 153:14-154:17.

### Abdullah's Subsequent Hotel Housekeeping Position

At some point after the foregoing events, Abdullah obtained a housekeeping position at

the Hotel Parq Central in Albuquerque, where she wore her hijab in performing her duties.

# LEGAL STANDARD

## Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2).  The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted).  Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id.  See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993).  It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

**DISCUSSION**

Plaintiff asserts four causes of action under Title VII for (1) *failure to accommodate religious beliefs and practices* (42 U.S.C. §§ 2000e(j) and 2000e-2(a)); (2) *failure to hire and/or discharge* (42 USC § 2000e-2(a)); (3) *retaliatory failure to hire and/or discharge* (42 USC § 2000e-3(a)); and, in the alternative, (4) *constructive discharge* (42 USC § 2000e-2(a)). Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  Title VII defines "religion" to include only those "aspects of religious observance and practice" that an employer can "reasonably accommodate . . . without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  Pursuant to the statute, an employer must "reasonably accommodate the religious practices of an employee or prospective employee, unless the employer demonstrates that accommodation would result in undue hardship on the conduct of its business." 29 C.F.R. § 1605.2(b)(1), (2); *see also EEOC v. Abercrombie & Fitch Stores, Inc.,* 798 F. Supp. 2d 1272, 1282 (N.D. Okla. 2011).  Further, Title VII's  prohibits employer retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."  42 U.S.C. § 2000e-3(a).

Defendants bring four separate motions for partial summary judgment that generally overlap in content.  The Court will take up each of Defendants' motions in the order in which it must be addressed in undertaking the pertinent discrimination analysis.

8

I.     **Defendants' "Motion for Summary Judgment Due to Plaintiff's Failure to Proffer a Prima Facie Case of Religious Discrimination"**

Defendants' first motion seeks a summary judgment that Plaintiff fails to establish a prima facie case for religious discrimination. (Doc. 86). It is unclear from the title of the motion whether Defendants seek summary judgment on Plaintiff's Count I for failure to accommodate Abdullah's religious needs, Count II for religious discrimination in failing to hire and/or discharging Abdullah, and/or Count IV for religious discrimination in Abdullah's constructive discharge. (Defendants' motion does not mention Plaintiff's retaliation claim, which is set forth at Count III of their Complaint). Depending on the underlying facts in a case, courts in the Tenth Circuit have sometimes assessed these different categories of religious discrimination claims under different legal standards. *See, e.g., Shapolia v. Los Alamos Nat'l Laboratory,* 992 F.2d 1033, 1037-38 (10th Cir. 1993) (rejecting application of "failure to accommodate" analysis to claim for religious discrimination in discharge of employee); *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 978, 983 (10th Cir. 2008) (applying different tests to religious discrimination claims for unlawful discharge and failure to hire).

In the argument section of their opening brief, Defendants clarify that they are seeking summary judgment on Plaintiff's "failure to accommodate" claim. (Doc. 86 at 4). Defendants further suggest, however, that the "failure to accommodate" analysis should apply to each of Plaintiff's religious discrimination claims, such that Defendants are entitled to summary judgment on each count for religious discrimination under the same analysis. *See* Doc. 124 at 5 (Defendants noting, without citing any authority, that "the legal standard articulated by Defendants with regard to a proffer of religious discrimination . . . appl[ies] to ***each*** of

9

[Plaintiff's] cognizable claims in this case.") (emphasis in the original).  While Defendants' bare assertion, without more, is insufficient to convince the Court that all of Plaintiff's religious discrimination claims should be assessed under the same standard, because Plaintiff does not dispute the applicable standard  – and because the Court finds, in any event, that a material factual dispute exists as to whether Defendants failed to accommodate Plaintiff's religious needs – the Court finds for purposes of the instant motion only that the "failure to accommodate" standard applies to each of Plaintiff's religious discrimination claims.

**"Failure to Accommodate" Analysis**

A court assessing a Title VII claim against an employer for failure to accommodate a plaintiff's religious needs employs a variant on the burden-shifting approach originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the "failure to accommodate" burden-shifting analysis, the plaintiff employee bears the initial burden of production with respect to making out a prima facie case for failure to accommodate.  If the employee establishes a prima facie case, the burden shifts to the defendant employer to "(1) conclusively rebut one or more elements of the plaintiff's prima facie case, (2) show that it offered a reasonable accommodation, or (3) show that it was unable to accommodate the employee's religious needs reasonably without undue hardship."[3]  *Thomas v. National Ass'n of*

_____

[3]This burden-shifting analysis differs from the *McDonnell Douglas* test, which, at its second and third prongs, requires the defendant to articulate a non-discriminatory reason for having taken an adverse employment action against the plaintiff, and then the plaintiff to show that this reason is merely a pretext for discrimination. The Tenth Circuit explains that the purpose of the burden-shifting analysis differs in a"failure to accommodate" case because

> Congress has already determined that a failure to offer a reasonable accommodation to an otherwise qualified [ ] employee is unlawful discrimination. Thus, we use the burden-shifting mechanism, not to probe the subjective intent of the employer, but rather simply to provide a useful structure by which the district

*Letter Carriers,* 225 F.3d 1149, 1156 (10ᵗʰ Cir. 2000).  Here, Defendants argue that they are

entitled to summary judgment because Plaintiff cannot meet its initial burden of establishing a

prima facie case.

### Plaintiff Has Proffered Direct Evidence of Religious Discrimination Sufficient to Create a Material Dispute

As a threshold issue, Plaintiff contends that it need not establish a prima facie case under

the "failure to accommodate"  test in order to avoid summary judgment because it has proffered

direct evidence of religious discrimination.  "[W]here there is direct evidence of [a defendant's]

discriminatory motive, the burden-shifting framework . . . does not apply." *TransWorld Airlines,*

*Inc. v. Thurston,* 469 U.S. 111, 121 (1985)); *see also Riggs v. AirTran Airways, Inc.*, 497 F.3d

1108, 1117 (10ᵗʰ Cir. 2007) ("direct evidence demonstrates that the employment decision was

reached for discriminatory reasons").  Plaintiff notes that it is undisputed that Young and Slough

told Abdullah that she must remove her hijab, and "showed her the door" when she refused to do

so.  (Doc. 109 at 10).  More significantly, Plaintiff cites as direct evidence of discrimination

Abdullah's testimony that Slough told her that she could not wear a hijab in performing her

duties because "they have customers from different religion[s] that come to their hotel, and they

don't want me to show that – my religion, to show that I'm Muslim."  (Doc. 83 Ex. 1 Abdullah

Dep. at 71:7-71:11).

Defendants respond that Abdullah's testimony cannot serve as direct evidence of

_____

court, when considering a motion for summary judgment, can determine whether
the various parties have advanced sufficient evidence to meet their respective
traditional burdens to prove or disprove the reasonableness of the
accommodations offered or not offered.

*Thomas*, 225 F.3d at 1155 n.6 (quotation omitted).

Defendants' discriminatory motive because it contains a "subjective, self-serving statement" that "express[es] a personal opinion."  (Doc. 124 at 4) (quoting *Brooks v. Holiday Healthcare, L.L.C.,* 2008 WL 4499986 (D. Kan., Sept. 30, 2008) ("Statements expressing a personal opinion, even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination.")(unpublished)).  Defendants argue alternately that the quoted testimony a.) reflects *Abdullah's* "subjective, self-serving" memory of the events in issue and  b.) relates *Slough's* personal opinion as to why Abdullah's hijab should be disallowed.  Specifically, Defendants' briefing on the instant motion contends that Plaintiff's purported direct evidence is insufficient because it relies "on the subjective statements of their own Charging Party," Abdullah, an argument which Defendants fail to elaborate on further.  (Doc. 124 at 4).  However, Defendants' brief on another of their dispositive motions, which they incorporate by reference here, contends that the quoted testimony does not constitute direct evidence of discrimination because it recounts a "one-off . . . statement [that] proves nothing more than Slough's personal opinion[,] and reflects nothing about corporate policy."  (Doc. 114 at 6).

With respect to Defendants' briefly-noted contention that Abdullah's testimony under oath as to Slough's comment constitutes a subjective, self-serving statement on Abdullah's part, rather than direct evidence of religious discrimination, the Court finds that, because Defendants fail to press their point by supporting it with pertinent legal authority or additional explanation, such argument is waived.

In support of their position that the quoted testimony merely reflects Slough's personal opinion, Defendants cite to *Brooks*, in which the district court held that "letters or emails written on [a] plaintiff's behalf" by her former co-workers -- in which at least one co-worker stated that an unidentified supervisor declared at an unspecified time that "we need newer, younger"

employees – did not constitute direct evidence of age discrimination. *Brooks,* 2008 U.S. Dist.

LEXIS 76808 at *19-*20. The district court noted that the offered statements were inadmissible

hearsay; that the lone statement that referenced a desire for younger employees was "hearsay

within hearsay"; and that, even if the latter statement had been admissible, it merely showed that

the employer "harbor[ed] personal opinions" about the desirability of hiring younger employees,

not that the employer acted with discriminatory intent with respect to the plaintiff's own

termination:

> Proof by direct evidence requires evidence that the actual motive behind the
> termination was discriminatory animus. Evidence demonstrating discriminatory
> animus in the decisional process needs to be distinguished from stray remarks in
> the workplace . . . or statements by decisionmakers unrelated to the decisional
> process. Alternatively, direct evidence . . . may consist of 'an existing policy
> which itself constitutes discrimination.'

*Id.* at *22 (marks omitted). The court noted that the plaintiff's proffered evidence, even if

believed, failed to show that "discriminatory animus motivated the decision to terminate her. In

fact, plaintiff offers no evidence that [the] statement refers in any way to the decision to

terminate plaintiff. The court is uninformed as to when, or to whom the statement was made.

Thus, the court cannot discern any evidence of a discriminatory motive." *Id.*

The Court finds *Brooks* inapposite to the instant case. Here, Abdullah's testimony was

that Slough specifically gave her a discriminatory reason as to why she could not work at 704-

ABQ (that non-Muslim hotel guests would dislike her display of faith). The evidence does not

show that Slough was merely stating her personal opinion about Abdullah's hijab, separate from

the decisional process. Rather, the testimonial evidence of Abdullah and Catholic Charities Job

Developer Margie Lovato was that Slough was explaining her own understanding of ICA policy,

which dictated the employment decision not to allow Abdullah to wear her hijab.[4]

Thus, the Court finds that Plaintiff has proffered direct evidence of religious discrimination sufficient to create a material dispute as to whether her statutory rights under Title VII were violated. Accordingly, the Court finds that summary judgment on each of Plaintiff's claims for religious discrimination should be denied. *See TransWorld Airlines,* 469 U.S. at 121.

### Plaintiff Further Asserts a Prima Facie Case for "Failure to Accommodate"

Nevertheless, even assuming, *arguendo,* that Plaintiff had not proffered direct evidence of religious discrimination, the Court finds that the instant motion should be denied because Plaintiff has set forth a prima facie case for religious discrimination, based on indirect evidence of Defendants' failure to accommodate her religious needs. A plaintiff establishes a prima facie case for failure to accommodate by showing that (1) she had a bona fide religious belief that conflicted with an employment requirement; (2) she informed the employer of her belief; and (3) she suffered an adverse employment action for failing to comply with the employment requirement. *See id.* at 1155; *Abercrombie,* 798 F. Supp. 2d at 1282. Here, Defendants do not dispute that EEOC charging party Safia Abdullah had a bona fide religious belief in the necessity of wearing a hijab which conflicted with their employment requirements or that she informed them of this belief. Rather, Defendants argue only that a reasonable jury could not conclude that Abdullah suffered an adverse employment action at the hands of Defendants.

---

[4]For the same reason, the Court finds unhelpful Defendants' additional attempt to rely on *Power v. Koss,* 499 F.Supp. 2d 1194, 1200 (D. Kan. 2000), in which a district court rejected a plaintiff employee's attempt to rely on a C.E.O.'s stray, approving references to "young managers" as direct evidence that the actual motive behind the plaintiff's own termination was age discrimination. *Id.*

### A Genuine Dispute Exists as to Whether Abdullah Suffered an Adverse Action

The Tenth Circuit liberally defines what constitutes an adverse employment action. *See Orr v. City of Albuquerque,* 417 F.3d at 1150 ("Because of the remedial nature of Title VII lawsuits, we broadly define adverse employment action.").  Adverse employment actions are actions by the employer that constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld,* 381 F.3d 1028, 1032-33 (10th Cir. 2004).  However, a court will not consider "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action."  *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532 (10th Cir. 1998)(internal quotation marks and citations omitted).

Defendants contend that there is no evidence in the record that they committed an adverse employment action against Abdullah, arguing that Abdullah's claim that she was terminated rests solely on her own "subjective reaction" to the events in issue, rather than any "objective actions" of Defendants set forth in the record.  (Doc. 124 at 5) (citing *Johnson v. Kmart Corp.,* 942 F. Supp. 1070, 1073 (W.D. Va. 1996)).

### Evidence of Failure to Hire/Termination

First, Defendants attack the sufficiency of Plaintiff's claim that they failed to hire or terminated Abdullah.  They note that 704-ABQ HR Manager Luanne Slough

> testified that it was her understanding that [ ] Abdullah was going home to check to see if she had a shorter hijab she could wear, and that [ ] Abdullah ultimately never returned to the hotel.  Importantly, there is no evidence that the hotel told [ ] Abdullah she would be considered terminated if she failed to report back to work, or that any such discussion was had.  Abdullah left the hotel, and there is no evidence that the hotel expected that she would never return. . . . [T]he hotel did not terminate [ ] Abdullah, and no evidence supports the EEOC's contrary assertion.

(Doc. 124 at 6-7).

Defendants fail to meet their initial burden of showing an absence of evidence that they failed to hire or terminated Abdullah.  Defendants do not attempt to show what constitutes a failure to hire or termination of employment in the Tenth Circuit; do not support their representations with citations to Slough's testimony or other evidence in the record; and, most importantly, fail to address the conflicting testimony of Abdullah and Lovato, which creates a material dispute as to the manner in which the former left her employment with Defendants. Indeed, contrary to Defendants' general assertion that "there is no evidence whatsoever that Abdullah was asked to leave the hotel premises because she was wearing a religious head covering," (Doc. 124 at 6 n.3) (marks and emphasis omitted), Plaintiff has proffered Abdullah's testimony that Slough specifically cited the religious significance of her headscarf as the reason she could not work for the hotel if she wore one, and "literally show[ed] her the door" when she would not remove it.  (Doc. 109 at 13) (citation omitted).

Further, Defendants' assertion that "there is no evidence that the hotel expected that [Abdullah] would never return" to work after modifying her hijab for safety reasons is contradicted by Lovato's testimony that Abdullah and Slough called her on the morning in question and informed her that Abdullah was not allowed to wear her hijab, that her offer to "wear a shorter one" had  been rejected., and that Slough specifically attributed the decision to "the corporate office."  (Doc. 100 Ex. 2 Lovato Dep. at 35:2-35:20; 39:3-39:25).

<u>**Evidence of Constructive Discharge**</u>

Defendants further fail to show an absence of evidence in the record to support Plaintiff's alternative claim that Abdullah was constructively discharged.  "Even if an employee resigns, the plaintiff may still satisfy the adverse employment action requirement by demonstrating that

16

he was constructively discharged.  The plaintiff's burden in establishing constructive discharge is substantial." *Fischer v. Forestwood Co.,* 525 F.3d 972, 981 (10th Cir. 2008) (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007).  An employee is constructively discharged "when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Exum v. United States Olympics Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).  The voluntariness of an employee's resignation is thus assessed under an objective, totality of the circumstances standard.  *Id.* at 1136.

Defendants contend that Plaintiff cannot meet the reasonable person standard for demonstrating constructive discharge because of this case's purported resemblance to other cases in which a court found that a "religious adherent's subjective reaction to certain employment decisions" failed to meet the reasonable person standard.  (Doc. 86 at 5-6).  Defendants cite to *Straieb v. American Airlines, Inc.,* 735 F. Supp. 2d 837, 843 (N.D. Ill. 2010), in which a district court found that an airline's denial of a Muslim flight attendant's request for a ground assignment during Ramadan – despite the flight attendant's testimony that air travel interfered with his religious observances and caused him severe anxiety –  did not meet the objective standard for demonstrating a constructive imposition of medical leave.  According to Defendants, the fact that Abdullah "subjectively believed" that Slough's suggested alternative styling of her hijab "was unacceptable says nothing about whether an objectively reasonable person in [Abdullah's] position would have resigned under the same circumstances."  (Doc. 86 at 7) (citing *Johnson,* 942 F. Supp. at 1073 (plaintiff whose religious belief prohibited her from working on Sundays not constructively discharged where employer required her to work one Sunday per month, but allowed her to schedule workday around attending religious services)).

17

Defendants' argument that Abdullah refused to work under conditions that an objectively reasonable person would have tolerated appears to be based solely on Slough's version of events, in which Abdullah refused to wear any head covering other than a hijab so loose that it constituted a safety hazard.  Indeed, Defendants assert that there is "no testimony [in the record] supporting [the] inflammatory inference" that they required Abdullah to "show her hair," in order to work at 704-ABQ.  (Doc. 124 at 9).  The problem with Defendants' argument, for purposes of the instant motion, is that Abdullah testified that while Slough did "not specifically" order her to show her hair, (Doc. 112 Ex.3 Abdullah Dep. at 75:3), she instead (1) rejected Abdullah's offer to wear her bona, which would not have been loose, and would have covered her hair entirely; (2) told Abdullah that "she doesn't want [her] to show [her] religion,"(*id.* at 74:25): and (3) proposed a modification in which Abdullah's "hair [would be] shown from the front and shown from the back," which Abdullah found unacceptable because "my religion requires me to, you know, cover all my hair."  *Id.* at 75:12-75:13, 76:23-76:25.

The Court finds that Defendants fail to meet their initial burden of showing an absence of evidence showing constructive discharge.  Defendants fail to argue, let alone support, the position that an objectively reasonable Muslim woman would tolerate the employment requirement that she style her hijab in a deliberately secular, hair-revealing manner.  Rather, Defendants press the point that a reasonable person would have tolerated a heavily disputed modification, an argument that a jury may or may not agree with, should it believe Slough's version of events.   Thus, the Court finds that there is evidence of constructive discharge in the record sufficient to withstand summary judgment.

Accordingly, the Court finds that Defendant's *Motion for Summary Judgment Due to Plaintiff's Failure to Proffer a Prima Facie Case of Religious Discrimination* (Doc. 86) should

18

be denied because Plaintiff has both (1) offered direct evidence of religious discrimination and (2) proffered a prima facie circumstantial case of "failure to accommodate" religious discrimination.

## II.  <u>Defendants' Motion Pursuant to the "Same Actor" Doctrine</u>

Next, Defendants move for a summary judgment that they are entitled to a presumption that they did not act with discriminatory animus towards Abdullah, because the same actor – 704-ABQ Housekeeping Director Terrie Young – made the decision to hire Abdullah and the decision to "inform [her] that she could not wear her hijab without modification."[5]  (Doc. 85 at 5).  In the Tenth Circuit, the "same actor" doctrine applies where "the employee was hired and fired by the same person within a relatively short time span," thereby creating "a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (quotation omitted).  The "same actor" doctrine does not apply where an employee proffers direct evidence in support of her Title VII claim.  *See, e.g., Johnson v. Barr Air Patrol, L.L.C.,* 2009 U.S. Dist. LEXIS 27501, at *18 (N.D. Tex., March 31, 2009) ("if an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct").

As an initial matter, the Court notes that, because Plaintiff has proffered direct evidence of religious discrimination, the "same actor" doctrine does not apply to the instant case.  *See*

---

[5]In their reply brief, however, Defendants contend that Abdullah was "hired and fired" by a different "same individual" – 704-ABQ Human Resources Manager Luanne Slough, and Young "transmitted the offer of employment."  (Doc. 114 at 11, 13).

*supra* at 11-14.  Nevertheless, even assuming for the sake of argument that there was no direct evidence of religious discrimination, the Court finds that the "same actor" presumption does not apply for the other reasons set forth below.

### Defendants Do Not Specify the Claims to Which the Doctrine Applies or Demonstrate Its Applicability to Them

Defendants' opening brief does not specify which of Plaintiff's causes of action should be assessed under the "same actor" doctrine.  Their reply brief suggests that the doctrine applies to any claim for which Plaintiff "bears the burden of establishing a prima facie case" – that is to say, all of Plaintiff's claims.  (Doc. 114 at 1).  As the doctrine's reference to defeating a showing of "pretext" suggests, however, courts have heretofore considered the potential applicability of the "same actor" doctrine in assessing non- failure-to-accommodate Title VII claims under the *McDonnell Douglas* analysis.  *See* n.4. Indeed, the Court notes that, of the eleven cases cited by Defendants in support of the instant motion, none involved a religious discrimination claim.  *See* Doc. 85 at 3-6; Doc. 114 at 6-13.   Thus, the Court finds that – even if the existence of direct evidence of religious discrimination had not rendered application of the "same actor" doctrine moot – Defendants' motion should be denied, in light of Defendants' failure to establish the applicability of the doctrine to each of the claims on which they seek summary judgment.

### Whether the "Same Actor" Hired and Terminated Abdullah is Disputed

Plaintiff argues the "same actor" doctrine is inapplicable because of evidence in the record that Terrie Young interviewed Abdullah, the Human Resources department at ICA and the hotel's own General Manager approved her hire, and Slough gave her the "ultimatum . . .  to remove her hijab or leave." *Id.* at 9.

Indeed, Defendants do not demonstrate a lack of a genuine dispute as to whether the

same actor made the decision to both hire and then allegedly terminate or constructively discharge Safia Abdullah, as evidenced by their own shifting argument as to the identity of the "same actor" in issue.  *See supra* n.6.  With respect to Abdullah's hiring, Defendants' briefs alternately suggest that Young should be considered the hiring party, because she was "the individual who interviewed Ms. Abdullah," (Doc. 85 at 5), and Slough "was the party who ***did*** hire Ms. Abdullah" (Doc. 114 at 12) (emphasis in the original).  Even if the Court accepts Defendants' representations as standing for the proposition that Young and Slough jointly hired Abdullah, the fact remains that the alleged "firing" actors are disputed.  While Defendants suggest that the record shows only that Young and/or Slough made the decision to not permit Abdullah's hijab, Plaintiff proffers (1) the testimony of Catholic Charities Job Developer Margie Lovato that Slough informed her that the ICA corporate office dictated the decision, as well as (2) the conflicting testimony of Slough and ICA's Cooper, the former of whom testified that she reached out to the latter for approval of the decision.  *See supra* n.2.

Thus, because (1) there is direct evidence of religious discrimination in this case, (2) Defendants have not established the applicability of the "same actor" doctrine to any of Plaintiff's claims, and (3) a dispute exists as to the agent(s) responsible for Abdullah's hire and alleged termination, the Court finds that *Defendants' Motion for Summary Judgment Pursuant to the "Same Actor Doctrine"* (Doc. 85) should be denied.

III.    **Defendants' Motion as to "Legitimate, Non-Discriminatory, Business-Related Reasons"**

Next, Defendants assert that they are entitled to summary judgment on Plaintiff's Title VII claims because there is no triable issue of fact with respect to their ability to meet their own

burden under the "failure to accommodate" test.  *See supra* at 10-11; *Thomas,* 225 F.3d 1149 at

1156 (in context of "failure to accommodate" claim, once employee establishes a prima facie

case, the burden shifts to employer to "(1) conclusively rebut one or more elements of the

plaintiff's prima facie case, (2) show that it offered a reasonable accommodation, or (3) show

that it was unable to accommodate the employee's religious needs reasonably without undue

hardship").  Specifically, Defendants assert that there can be no material dispute that they were

unable to "'reasonably accommodate [Abdullah's'] religious needs without undue

hardship.'"(Doc. 84 at 5).

     However, despite the initial citation to the applicable "failure to accommodate" standard

at the outset of their opening brief, Defendants then proceed  – as the title of their motion

suggests – to focus their argument primarily on why summary judgment should be granted under

the inapplicable *McDonnell Douglas* standard, which only requires a defendant to proffer a

legitimate, non-discriminatory reason for its employment decision.   Indeed, Defendants chiefly

rely on *EEOC v. Kelly Services, Inc*., 598 F. 3d 1022 (8th Cir. 2009), in which the Eighth Circuit

held that an employment agency had a legitimate, non-discriminatory reason for failing to refer a

Muslim woman to work for a position at a commercial printing company where she would have

worked with heavy machinery – namely, the fact that the woman refused to remove a waist-

length traditional headscarf known as a  *khimar*, which the employment agency maintained

violated the client company's safety-based dress code.  *See id.* at 1023 n.1; 1030.  The court then

concluded that the EEOC, acting on behalf of the woman, failed to show that the employment

agency's professed reason for the non-referral was pretextual under the *McDonnell Douglas* test.

*Id.* at 1030.

     Defendants' attempt to rely on *Kelly* is unpersuasive.  Significantly, the court in *Kelly*

observed that the case was distinguishable from "a typical religious discrimination claim against an employer," because the EEOC sued the defendant in its capacity as an "employment agency," not in the capacity of an "employer."  The court noted that there was no basis in Title VII for the proposition "that an 'employment agency,' in defending itself against a claim of religious discrimination, must demonstrate that *the employer* to which it would be referring the [ ] worker would suffer an undue hardship if it had to accommodate that worker."  *Id.* at 1031. Consequently, the court applied the *McDonnell Douglas* analysis, rather than the "failure to accommodate" analysis, which would have required the defendant to rebut the plaintiff's prima facie case, show a reasonable accommodation, or show how a reasonable accommodation would have created an undue hardship.  *See Thomas,* 225 F.3d at 1156.[6]

Here, in contrast to *Kelly*, there is no dispute that the EEOC brings the instant action against Defendants in their capacity as the employer(s) of Safia Abdullah.  Moreover, despite the appearance of confusion suggested by Defendants' moving for summary judgment for "legitimate, non-discriminatory, business-related reasons" (Doc. 84 at 1), there is no dispute that Plaintiff's claims must be assessed under the "failure to accommodate" standard.  *See, e.g.*, Doc. 123 at 11 (Defendants acknowledging that, assuming that Plaintiff meets its burden of establishing a prima facie case, "the burden then falls on the [h]otel to show that it offered a reasonable accommodation.").  Thus, cases in which a court granted summary judgment to a

---

[6]Most of the other cases cited by Defendants are inapposite for the same reason, turning on a plaintiff's inability to show pretext under the *McDonnell Douglas* analysis, rather than the defendant's ability to meet its burden under the "failure to accommodate" analysis.  *See* Doc. 84 at 6-7 (collecting cases); *id*. at 7 (Defendants invoking the *McDonnell Douglas* standard in asserting that "the Court should not disturb the valid business judgment of the [h]otel absent some evidence of pretext. . . . [T]he Court should not attempt to manage the human resources of an employer vis a vis litigation.").

defendant under a typical *McDonnell Douglas* analysis are irrelevant to whether Defendants are entitled to summary judgment on Plaintif's "failure to accommodate" claims.

Next, Defendants contend that they are entitled to summary judgment because Abdullah admitted at her deposition that "Slough made reasonable attempts to accommodate" her.  *Id.* While Defendants do not cite to the testimony upon which they seek to rely, they appear to refer to Abdullah's testimony that, after Slough used a kleenex to demonstrate ways that Abdullah could style the hijab in a  fashion that would reveal more of her hair.  (Doc. 83 Ex. 1 Abdullah Dep. at 71:7-71:11).  Thus, according to Defendants, while "there is a dispute over the type of accommodations offered, there is no dispute that accommodation was attempted."  (Doc. 123 at 11).

The Court finds Defendants' argument insufficient to show the absence of a material dispute.  As set forth above, the parties strongly dispute whether Slough suggested an alternate style to Abdullah as a safety measure or as a means of covering up her religious beliefs. Moreover, the parties dispute whether Abdullah offered to wear the inner, *bona* portion of her hijab and was rejected by Defendants -- an accommodation that, if allowed, would have secured her hair snugly.

Finally, Defendants argue that summary judgment should be granted because allowing Abdullah to wear her hijab in an unmodified style "in violation of the safety policy" would have constituted an undue burden on 704-ABQ.  (Doc. 84 at 7). While Defendants reference the existence of a written safety policy forbidding "loose hair" in their proposed facts, they do not quote or cite to the policy in their arguments, do not attach the policy to the instant motion or specify where it can be found elsewhere in the record, and do not explain whether the policy belonged to ICA, 704-ABQ, or both.  *See id.* at 3.  Instead, Defendants suggest that their

24

argument is supported by "precedent" including "the aforementioned cases." *Id.* at 7.  However,

the only case Defendants identify as support for their position is *Kelly*, in which the Eighth

Circuit declined to apply the "failure to accommodate" test, and, consequently, did not take up

the question of whether accommodating the employee's professed religious need to wear a head

covering would have constituted an undue hardship.  Thus, because Defendants fail to support

their position with any authority or substantive argument, the Court need not consider it further.

*See Phillips v. Hillcrest Med. Ctr.,* 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails

to press a point by supporting it with pertinent authority or by showing why it is sound despite a

lack of supporting authority or in the face of contrary authority, forfeits the point.") (quotation

and brackets omitted).

Accordingly, because Defendants fail to show the absence of a material dispute as to

whether they were unable to accommodate Abdullah's religious needs reasonably without undue

hardship, the Court finds that Defendants' *Motion for Summary Judgment (Legitimate, Non-*

*Discriminatory, Business-Related Reasons)* (Doc. 84) should be denied.


IV.    **Defendants' "Motion on the Issue of Punitive Damages**"

Defendants' final motion seeks a summary judgment that Abdullah is not entitled to

punitive damages, should she prevail at trial. (Doc. 83).  "The standard for punitive damages

under Title VII . .. limits the recovery of punitive damages to situations where 'the complaining

party demonstrates that the respondent engaged in a discriminatory practice or discriminatory

practices with *malice* or with *reckless indifference* to the federally protected rights of an

aggrieved individual.'" *Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1278 (10th Cir.

2008) (quoting 42 U.S.C. § 1981a(b)(1)) (emphasis added).  "The terms 'malice' or 'reckless

indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. ADA,* 527 U.S. 526, 535 (1999).  Consequently, the assessment of punitive damages "requires, at a minimum, evidence that the employer acted 'in the face of a perceived risk that its actions [would] violate federal law.'" *Hysten,* 530 F.3d at 1278 (quoting *Kolstad,* 527 U.S. at 536).

Here, Defendants contend that summary judgment should be granted because "[t]here is not a scintilla of evidence on record in this case to support an award of punitive damages." (Doc. 83 at 5).  In support of their position, Defendants cite only to former 704-ABQ HR Manager Luanne Slough's statement at her deposition – upon being asked why she did not bring up Abdullah's hijab as a potential concern when she first noticed Abdullah wearing it on the day of her job interview – that "I had no reason to.  Did not know anything about her religion, did not know that it was a requirement that she wear it."  (Doc. 83 at 5) (citation omitted).  Defendants do not offer any additional explanation as to how the quoted statement supports their claim for summary judgment on the issue of punitive damages.

The Court notes that Slough's statement, if credited as true by a jury, is evidence only of her personal lack of familiarity with the religious significance of the hijab at the time of Abdullah's interview.  Without more, the cited testimony is insufficient to show that, at the time of Abdullah's alleged termination or constructive discharge, Defendants lacked the requisite knowledge of federal anti-discrimination law to be liable for punitive damages.  Indeed, it is undisputed that, prior to Defendants' hiring Abdullah, Slough had received both general training on Title VII anti-discrimination employment law and specific training on the proper handling of employee requests for religious accommodations, from which she gleaned that "if it was something you could easily accommodate, yeah, you make the accommodation."  (Doc. 100 Ex.

4 Slough Dep. at 10:24-11:7; 153:14-154:17).  Further, even if Slough did not understand the religious significance of the hijab at the time of Abdullah's interview, it is undisputed that, on the day of her alleged termination/constructive discharge, Slough learned directly from Abdullah that she was unwilling to remove her headscarf for religious reasons.  Thus, there is clearly evidence in the record from which a jury – should it determine that Defendants' actions constituted a violation of Title VII – could find that Abdullah is entitled to punitive damages under the *Kolstad* standard.

Moreover, Defendants' argument assumes that the decision to not hire, discharge, or constructively discharge Abdullah was solely Slough's.  Defendants' position overlooks the factual dispute created by the varying accounts of two of their agents, Slough and ICA Human Resources Manager Tanya Cooper.  Specifically, Slough testified at her deposition that she contacted Cooper at ICA to ask whether she had followed the correct course of action by refusing to allow Abdullah to work in a hijab, and learned that Cooper "felt the same way that I did . . . she was concerned that a loose garment could potentially be a safety issue."  (Doc. 100 Ex. 4 Slough Dep. at 145:7-145:9).  Cooper, however, testified that she never had a conversation with Slough specifically about Abdullah at any time prior to Abdullah's filing an EEOC complaint against Defendants.  (Doc. 100 Ex. 7 Cooper Dep. at 119:21-120:10) (Cooper answering, "that's correct," to question of whether her "testimony today is that [she] never spoke about Safia Abdullah with Luanne Slough, ever, period, before the EEOC charge?").  Should a jury both (1) find in favor of Abdullah on her discrimination and/or retaliation claims and (2) believe Slough's testimony that Cooper and/or other agents of ICA dictated or ratified the challenged employment decision, the jury would then need to determine whether those persons acted in the face of a perceived risk that they were violating Title VII anti-discrimination law.

Accordingly, the Court finds that Defendants' *Motion for Summary Judgment on the Issue of Punitive Damages* (Doc. 83) should be denied.

## **CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants ICA's and 704-ABQ's

(I.)  *Motion for Summary Judgment Due to Plaintiff's Failure to Proffer a Prima Facie Case of Religious Discrimination* (Doc. 86),

(II.)  *Motion for Summary Judgment Pursuant to the "Same Actor Doctrine"* (Doc. 85),

(III.)  *Motion for Summary Judgment (Legitimate, Non-Discriminatory, Business-Related Reasons)* (Doc. 84), and

(IV.)  *Motion for Summary Judgment on the Issue of Punitive Damages* (Doc. 83)

are all DENIED.


_____
**UNITED STATES DISTRICT JUDGE**