# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

v.                                         No. CIV 11-845 JCH/LFG

704 HTL OPERATING, LLC, and
INVESTMENT CORPORATION OF
AMERICA d/b/a MCM ELEGANTE HOTEL,

                Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING BOTH MOTIONS TO EXCLUDE EXPERT TESTIMONY[1][2]

THIS MATTER is before the Court on (1) Plaintiff Equal Employment Opportunity Commission's ("EEOC") motion to exclude Defendants' proposed expert witness Dawinder S. Sidhu's ("Mr. Sidhu") testimony and (2) Defendants' motion to exclude EEOC's proposed expert witness John Hogan's ("Mr. Hogan") testimony.  Both motions are fully briefed.  (Doc. Nos. 80, 99, 120; Doc. Nos. 89, 115, 132.)  After careful consideration of the pertinent law, pleadings, and briefing and exhibits, the Court concludes that both motions to exclude expert testimony will be granted and that neither proposed expert will be permitted to testify at trial.[3]

---

[1]On August 23, 2013, the Honorable Judith C. Herrera issued an Order of Reference, in accordance with 28 U.S.C. § 636(b)(1)(A), requiring the undersigned Magistrate Judge to resolve both parties' motions (Doc. Nos. 80, 89) to exclude each other's expert witness (Doc. No. 144).

[2]This case was stayed in relation to the government "shutdown."  (Doc. No. 151.)  Therefore, deadlines related to any motion practice directed at the Court's rulings in this decision are stayed until fifteen (15) days after the Court lifts the stay.

[3]The Court finds no basis to conduct Daubert hearings in deciding the motions.  Rather, the Court will consider both motions on the briefs in accordance with this District's local rules. D.N.M. LR-Civ. 7.6(a).

**Background**

On September 21, 2011, EEOC brought claims for religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Doc. No. 1), on behalf of charging party Safia Abdullah ("Ms. Abdullah"), who contends that Defendants wrongfully terminated her after she declined to remove her hijab, a traditional headscarf worn by Muslim women. (*See* Doc. No. 147, Memorandum Opinion and Order denying Defendants' motions for partial summary judgment, for additional background information.) It is undisputed that Ms. Abdullah is an Iraqi-born refugee and a practicing Muslim. (Doc. No. 147, at 2.) "At the heart of this case is [Ms.] Abdullah's religious practice of wearing a hijab, or headscarf, which, Plaintiff claims, led Defendants to rescind their offer of employment to her in violation of federal anti-discrimination law." (Id.)

In early 2010, Ms. Abdullah and her brother began seeking employment with assistance through the Catholic Charities of Central New Mexico, a program that assists refugees and asylees with job placement in the Albuquerque area. Both Ms. Abdullah and her brother obtained interviews for housekeeping positions at Defendant 704 HTL Operating, LLC, that does business as the MCM Elegante Hotel of Albuquerque ("Elegante Hotel").

When Ms. Abdullah interviewed for a housekeeping position at Elegante Hotel, she wore her hijab. On the date of the interview, no one at the hotel asked her or expressed an opinion about her hijab. (Id., at 3.) Elegante Hotel offered employment to Ms. Abdullah. On March 15, 2010, Ms. Abdullah, wearing her hijab, reported to work at the hotel. There are disputes in the facts as to the ensuing events and conversations. It is uncontested that Ms. Abdullah was asked to remove her hijab upon her arrival for work. However, the reasons for asking Ms. Abdullah to remove the hijab are disputed. Elegante Hotel employees allegedly told Ms. Abdullah that the hotel did not want her to show her religion by wearing the hijab or that the hotel believed there were safety concerns if Ms.

2

Abdullah wore her hijab while performing housekeeping duties.  Elegante Hotel contends it suggested that Ms. Abdullah pin back the hijab or wear a smaller boma that would not pose a safety hazzard.  Ms. Abdullah denies that these requests were made.  It is also disputed whether Defendants terminated Ms. Abdullah's employment or whether she abandoned her job due to the dispute about her hijab.  It is agreed that Ms. Abdullah did not perform any duties for Elegante Hotel.  (Id., at 3-5.)

The District Court summarized EEOC's claims as: "(1) failure to accommodate religious beliefs and practices (42 U.S.C. §§ 2000e(j) and 2000e-2(a)); (2) failure to hire and/or discharge (42 U.S.C. § 2000e-2(a)); (3) retaliatory failure to hire and/or discharge (42 U.S.C. § 2000e-3(a)); and, in the alternative, (4) constructive discharge (42 U.S.C. § 2000e-2(a))."  (Id. at 8.)  Defendants denied all of Ms. Abdullah's claims and sought summary judgment on her claims.  However, the District Court found genuine issues of material fact existed, and, therefore, denied the partial motions for summary judgment.  (Doc. No. 147.)  The Court also denied Defendants' motion for summary judgment on the issue of punitive damages.[4]

This case is set for a jury trial to commence on November 18, 2013.  (Doc. No. 103.)  However, on October 3, 2013, due to the government "shutdown" occasioned by a congressional budget impasse, the Court granted EEOC's motion to stay that included extending all deadlines "for the same number of days as the EEOC's lapse in funding or as otherwise agreed to by the parties or ordered by the Court."  (Doc. No. 151.)  That Stay Order may impact the trial date and related deadlines.

---

[4]In addition, the Court denied cross-motions on the issue of integrated enterprise.  (Doc. No. 143.)

**Motions to Exclude**

Both parties seek to exclude testimony by a proposed expert witness.  EEOC's motion asks to preclude Mr. Sidhu, Defendants' proposed expert, from providing opinions on religious discrimination in the workplace. (Doc. 80-1, at 8.) Defendants' motion requests that the Court exclude Mr. Hogan, Plaintiff's proposed expert, from offering testimony on known standards and practices in the hospitality and hotel industry.  (Doc. No. 89-1, at 3.)  Both parties argue, in part, that the proposed experts should not be allowed to testify because their testimony would not assist the finder of fact.

**Legal Standard**

Rule 702 is the pertinent rule of evidence in determining whether an expert may offer opinions.  That rule provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may provide opinions if:

> (a) the expert's  scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

 "Before expert testimony can be admitted, [Rule] 702 requires the district court to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' " Water Pik, Inc. v. Med-Sys., Inc., 726 F.3d 1136, 1145 (10th Cir. 2013) (citing In re Williams Sec. Litig.-WCG Subclass, 558 F.3d 1130, 1137 (10th Cir. 2009) (quoting Daubert v. Merrell Dow

Pharm., Inc., 509 U.S. 579, 589 (1993)).  In accordance with Daubert, the district judge determines at the outset whether the expert's proposed testimony and knowledge will assist the trier of fact to understand or determine a fact in issue.  Daubert, 509 U.S. at 592.  If the Court concludes that the proposed testimony is not relevant, reliable, or will not assist the fact finder, the proposed testimony should be excluded. *See* Norris v. Baxter Healthcare Corp., 397 F.3d 878, 884 (10th Cir. 2005) (if party fails to satisfy reliability prong, the Court need not address relevancy).

The determination of whether an expert will be allowed to testify under Rule 702 is known as the Court's gatekeeping role.   *See* Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 147-49 (1999) (gatekeeping role required by Daubert applies to all expert testimony, not just experts with "scientific testimony").  The purpose of Daubert gatekeeping is "to undertake whatever inquiry is necessary to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1243 (10th Cir. 2000) (quotation omitted).  The Tenth Circuit Court of Appeals recognizes that a district court has wide latitude in exercising its discretion to admit or exclude expert testimony, *i.e.,* wide discretion in assessing an expert's reliability and in making a determination of that reliability. Norris, 397 F.3d at 883 (citations omitted).

The Court's gatekeeping function involves a two-part inquiry.  "[A] district court must [first] determine if the expert's proffered testimony ... has 'a reliable basis in the knowledge and experience of his discipline.'"  Id. (*quoting* Daubert, 509 U.S. at 592).  In making this determination, the district court decides "whether the reasoning or methodology underlying the testimony is scientifically valid...."  Id.  (quotation omitted).  Second, the district court inquires into whether the proposed testimony is sufficiently "relevant to the task at hand."  Id.

5

Some courts add an element of "fit" to the second inquiry, *i.e.*, whether there is an appropriate "fit" between the evidence offered and the material issue to which it is directed. *See, e.g.*, Hoffman v. Ford Motor Co., 493 F. App'x 962, 975 (10th Cir. Aug. 16, 2012) (unpublished) (noting case law indicating that even where expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the pertinent issues to show a relevant "fit"), *cert. denied*, 133 S.Ct. 2734 (2013); Trotter Overhead Door, Inc. v. Trotter Doors, LLC, 2013 WL 4520242, at *2 (W.D. Okla. Aug. 26, 2013) (unpublished); Wartsila NSD North Am., Inc. v. Hill Int'l, 299 F. Supp. 2d 400, 404 (D.N.J. 2003) (expert's testimony must "fit" the facts of the case and assist jury in its determination of issues in dispute). In assessing the relevance or "fit" of proposed testimony, the Court also considers the related question of helpfulness to the jury. "Expert testimony is unnecessary where it addresses a question the jury is capable of assessing or determining for itself." Trotter, 2013 WL 4520242, at *2 (*citing* Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994)). Further, expert testimony may not go to ultimate issues of law governing the jury's deliberations, as instructions on the law are the function of the court. Id. (*citing* United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd., 582 F.3d 1131, 1150 (10th Cir. 2009)).

In addition to Rule 702, Federal Rule of Evidence 403 may play a role in the Court's decision to preclude or permit expert testimony. Rule 403 allows a court to exclude evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

**Analysis**

**I.**     **EEOC's Motion to Exclude Mr. Sidhu's Expert Testimony**

    A.     Expert Qualification

EEOC first argues that Mr. Sidhu is not qualified to testify as an expert in the area of alleged religious discrimination and retaliation by an individual.  EEOC further asserts that while Mr. Sidhu is a legal scholar and law professor, he does not have sufficient specialized knowledge or training to qualify as an expert.  (Doc. No. 80, at 1.)

Mr. Sidhu is an attorney and an Assistant Professor of law at University of New Mexico's School of Law.  He teaches courses in Introduction to Constitutional Law, Constitutional Rights, and Employment Discrimination.  [Doc. No. 80-1.]  In 2010, he was a Fellow with Harvard University.  In 2007-08, he was a law clerk to a federal district court judge.  He has published a number of articles in law reviews, including one expected to come out soon, entitled "Religious Freedom and Inmate Grooming Standards."

The Court only briefly mentions Mr. Sidhu impressive academic background and credentials in determining that he has sufficient specialized knowledge, skill, experience, and training to qualify as an expert under Rule 702.  The Court concludes that most of Mr. Sidhu's proffered testimony has "a reliable basis in the knowledge and experience of his  discipline."  <u>Daubert</u>, 509 U.S. at 592. However, notwithstanding his reliability and impressive credentials, the Court precludes Mr. Sidhu's proposed testimony for the reasons stated below.

    B.     Proposed Expert Opinions

In supplying proposed opinions, Mr. Sidhu reviewed numerous pleadings, exhibits, notes, deposition transcripts, letters, Elegante Hotel's handbook, documents, and EEOC's expert

disclosures.  (Doc. No. 80-1, at 12-14.)[5]  In his expert report, Mr. Sidhu summarizes the claims and defenses in this case and the pertinent law.  (Id., at 14-22.)  In determining whether or not to permit Mr. Sidhu's expert testimony, the Court reviewed the briefing, Mr. Sidhu's expert report, and excerpts of his deposition testimony.  (Doc. Nos. 80, 99, exhibits.)

Mr. Sidhu intends or may intend to offer the following opinions or testimony at trial:

(1) *prima facie* requirements for a claim of religious discrimination under Title VII (Doc. No. 99, at 3);

(2) whether Ms. Abdullah's wearing of a hijab pursuant to Islamic tradition implicates/activates Title VII protections (Doc. No. 80, at 3; Doc. No. 80-1, at 15);

(3) whether Ms. Abdullah's removal of the hijab for a photograph or other purposes satisfies Title VII *prima facie* requirement that she have a bona fide religious belief that conflicts with an employment requirement (Id., at 15-16), and whether the Court should examine if Ms. Abdullah actually has a bona fide religious belief (Doc. No. 80-2, at 76);

(4) Title VII requirements of a reasonable accommodation and case law interpreting the reasonable accommodation requirement to mean a "by-product of a good faith back-and-forth between the employer and the employee" (Doc. 80-1, at 16-17);

(5) whether a reasonable accommodation would have caused undue hardship to Elegante Hotel, and whether, based on testimony by Defendants' employees, Elegante Hotel took appropriate steps in offering a reasonable accommodation ("This seems to be an effort on Defendants' part to find a mutually satisfactory solution as part of a good faith bilateral dialogue[;]" "[b]ased on this [testimony], the reasonable accommodation requirement . . . would seem to be met") (Id., at 17-18);

---

[5]The Court's pages numbers regarding Mr. Sidhu's expert report (Doc. No. 80-1) refer to the page numbers at the upper right hand corner of the report.

(6) whether Ms. Abdullah terminated the "interactive process" sufficient to relieve Elegante Hotel of the obligation to offer a reasonable accommodation (Id., at 18);

(7) whether testimony indicates that Defendants were not "categorically averse to Ms. Abdullah wearing a headcovering" at work, and whether Defendants' efforts demonstrate reasonable accommodation under the law (Id., at 19);

(8) whether Title VII allows an individual an "optimal accommodation or [] the accommodation that he or she suggests or wants[,]" or stated differently, whether Ms. Abdullah had a legal right to request a head covering of her choosing; (Id., at 18-19);      (9) whether Defendants' testimony indicates they were in search of a suitable headcovering and whether Defendants' comments to Ms. Abdullah about taking "it" off referred to her wearing her preferred headcover, rather than the right to wear a headcovering at all (Id., at 20);

(10) whether safety and health considerations amount to undue hardship to excuse Defendants from offering a reasonable accommodation (Id., at 21);

(11) whether Defendants possess a facially neutral safety policy with respect to what clothing, etc. employees may wear or what clothing, etc. poses a safety hazard (Id., at 22);

(12) whether Defendants "possess a well-established, firmly grounded justification for any refusal not to allow Ms. Abdullah to wear her particular headscarf" (Id., at 23-24);

(13) whether Title VII requires an employer to take proactive steps in furtherance of safety considerations only after an accident or incident has occurred (Id., at 24);

(14) whether questions of undue hardship in relation to safety issues may be resolved as a matter of law (Id., at 25);

(15) whether Defendants possessed legitimate liability concerns or "valid safety concerns" in terms of Ms. Abdullah's intent to wear a headcovering (Id.);

(16) whether Ms. Abdullah's brother's has a claim of religious discrimination and Mr. Sidhu's opinion that any such claim is without merit (Id., at 26);

(17) whether Title VII imposes any affirmative obligation for employees to have "requisite training in religious discrimination or related matters" (Id., at 26-27); and

(18) whether Ms. Abdullah and her family "may have grand and idealistic views as to what the law in the United States requires with respect to religious observance" and Mr. Sidhu's opinion that the "law is not as generous as Ms. Abdullah's family believes it to be" in the United States (Id., at 27; Doc. 80-2, at 113).

      C.    Discussion

          1.    ***Testimony as to Facts:***

Many of the areas about which Mr. Sidhu intends to testify are factual in nature or require resolution of factual disputes. For example, they concern whether Ms. Abdullah's religious beliefs are sincere, the importance of her removal of her hijab for a photograph, whether the parties engaged in an interactive process to determine a reasonable accommodation, what steps Elegante Hotel took in offering Ms. Abdullah an accommodation, whether Ms. Abdullah refused any accommodation, insisted on a particular accommodation, or offered to use a different sort of headcover, whether Defendants "categorically" opposed Ms. Abdullah wearing a headcover or accepted a different type of headcover, and what Defendants meant by allegedly telling Ms. Abdullah to take "it" off. These are questions for the jury to decide through evidence presented at trial.

While Defendants argue that Mr. Sidhu does not intend to state legal conclusions drawn by applying the law to the facts, which they concede is prohibited (Doc. No. 99, at 8-9), that is what Mr. Sidhu's proposed opinions do. In his expected testimony as set out above, Mr. Sidhu discusses the required elements of Title VII religious discrimination based on his review of selected case law,

and then applies the law to the facts he determined to be more likely true than not, based on his review deposition testimony. He then concludes, for example, that Defendants made an effort to find a mutually satisfactory solution regarding Ms. Abdullah's headcover and, therefore, met the requirement of reasonable accommodation. Mr. Sidhu opines or suspects that Ms. Abdullah terminated the "back-and-forth" interactive accommodation process.

Generally, the use of expert testimony is not permitted if it will usurp the role of the jury in applying that law to the facts before it. When an expert undertakes to tell the jury what result to reach with result to the facts, this does not assist the jury in making a decision. Instead, such expert testimony generally results in substituting the expert's judgment for the jury. The Court cannot permit Mr. Sidhu, by offering opinions on factual issues, to invade the role of the jury. Thus, the Court precludes this type of expert testimony by Mr. Sidhu.

2.      ***Testimony as to Law:***

The next significant part of Mr. Sidhu's proffered opinions consists of a discussion and interpretation of the law, specifically Title VII religious discrimination and the *prima facie* elements of that claim. He also intends to provide "historic legal context for ongoing social ramifications of religious discrimination and the development of current anti-discrimination law." (Doc. No. 99, at 10.) Discussion of the applicable law and standards are an essential part of the Court's function. The Court will instruct the jury on the requisite elements of religious discrimination under Title VII, including requirements for demonstrating a reasonable accommodation and undue burden.

The Court recognizes that there is not a "per se" ban on expert testimony that touches upon legal issues. However, "expert testimony on legal issues crosses the line between the permissible and impermissible when it 'attempt[s] to define the legal parameters within which the jury must

exercise its fact-finding function.'" <u>Smith</u>, 214 F.3d at 1246 (*citing* <u>Specht v. Jensen</u>, 853 F.2d 805, 809-810 (10th Cir. 1988)).

Based on the Court's instruction of the law and the jury's application of the law to the facts presented through evidence, the jury will decide if, for example, Ms. Abdullah held a bona fide religious belief that triggers Title VII protection and/or conflicts with "an employment requirement." The same is true with respect to issues of reasonable accommodation. The jury will receive instructions on the law and will apply the law to the facts regarding whether a reasonable accommodation was required, offered, and/or rejected by Ms. Abdullah.

Mr. Sidhu's proposed opinions represent his determination as to the legal require-ments that the parties must satisfy in terms of the elements of claims and defenses. The Court concludes that Mr. Sidhu's proposed testimony on legal issues "crosses the line" from permissible to impermissible. These are issues for the Court, and the Court cannot allow an expert witness to usurp its role in determining the law and instructing the jury. Conflict between the Court's instructions and the expert's opinion could well lead to jury confusion or misunderstanding. *See* Fed. R. Evid. 403.

Although Rule 704 abolishes the "ultimate issue rule," it does not permit an expert to replace the judge in explaining the law to the jury. The use of expert testimony must be "carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *See* <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1294 (2d Cir.) (securities case), *cert. denied,* 502 U.S. 813 (1991). *See also* <u>Moriarty v. Bd. of County Com'rs for County of Sandoval</u>, --- F. Supp. 2d ----, 2013 WL 1143674, at *16 (D.N.M. 2013) (finding proposed expert opinions were either excessively

speculative or attempted to provide legal conclusions, "going so far as to track . . .[statutory] language in a way that would impermissibly usurp the jury's role.")

Moreover, this is not a case where there is a need for instruction on the "historic legal context for the ongoing social ramifications of religious discrimination." This is not complex litigation that is outside a fact finder's general understanding. In other words, this is not a lawsuit where an expert witness is necessary to guide the trier of fact through a complicated set of obscure terms and concepts. To allow Mr. Sidhu to provide this type of historical discussion and interpretation of law, even if minimally probative, would potentially confuse the issues and cause undue prejudice, mislead the jury, cause undue delay, waste time, and present cumulative, unnecessary evidence. *See* Fed. R. Evid. 403. For all these reasons, the Court precludes this type of testimony by Mr. Sidhu.

### 3. *Testimony on Miscellaneous Areas:*

In addition to the above-discussed opinions and the Court's ruling precluding such expert testimony, there are three other areas about which Mr. Sidhu proposes to testify. One area concerns Elegante Hotel's purported safety and health considerations in the operation of its facility, including whether Elegante Hotel has a "facially neutral safety policy" regarding what clothing, etc. an employee may wear at work and whether it had legitimate safety concerns with respect to the use of a headcover. Mr. Sidhu testified in his deposition that he has no education or training in the hospitality industry and no training in the area of workplace safety. (Doc. No. 80-2, at 57.) Thus, he is not qualified to offer opinions or testimony about a hotel's safety and health policies, practices, and training. Moreover, safety concerns for employees and the desire to avoid workplace accidents and injuries is best presented by a hotel manager or representative.

Further, it is not necessary for Mr. Sidhu to offer testimony about the beliefs that Ms. Abdullah and her family may have in terms of their views on the law on religious observance in the

United States. Evidence of what Ms. Abdullah and her family knew, believed, or assumed, if relevant, must come from the trial testimony of the individuals concerned. Mr. Sidhu testified that he has never met Ms. Abdullah or her family. While Mr. Sidhu also testified that it "seemed to me" that Ms. Abdullah and her brother have views on what Title VII requires and the extent to which religious liberty may be guaranteed in this country, that type of testimony by an expert is speculative. Even if relevant, the Court would preclude such testimony in accordance with Fed. R. Evid. 403, because any probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

Mr. Sidhu also intends to testify about claims of religious discrimination by Ms. Abdullah's brother, Mr. Abdullah. Mr. Sidhu reviewed exhibits concerning Mr. Abdullah and opined that he had no claim for religious-based discrimination. Mr. Abdullah has not asserted any claim for discrimination, and the EEOC confirmed in pretrial proceedings that no administrative complaint is pending. Mr. Sidhu agreed in his deposition that the EEOC complaint did not include a claim on behalf of Mr. Abdullah. [Doc. No. 80-2, at 59-60.] Thus, the Court will not allow expert testimony about Mr. Abdullah's possible claim of religious discrimination when there is no such claim at issue in this lawsuit. Such testimony is not relevant, confuses the issues, and wastes time. Fed. R. Evid. 403.

In sum, the Court does not find that any of Mr. Sidhu's proposed testimony is relevant or that his opinions and knowledge would assist the trier of fact to understand or determine a fact in issue. In other words, the Court does not find an appropriate "fit" between the evidence offered and the material issues to which it is directed. In addition, the Court determines that Mr. Sidhu's testimony is not necessary as it either addresses questions the jury is capable of assessing or it pertains to legal issues within the Court's domain.

14

The Court acknowledges Defendants' position that Mr. Sidhu intends "only to proffer opinions that give context and clarity to the facts of this case." (Doc. No. 99, at 8.) However, the Court does not find this argument persuasive or accurate based on Mr. Sidhu's summary of opinions and proposed testimony. Moreover, even if the proposed opinions are relevant or minimally helpful, the Court concludes that Rule 403 precludes such testimony. Thus, the Court grants EEOC's motion and excludes all of Mr. Sidhu's proposed expert testimony.

**II.**     **Defendants' Motion to Exclude Mr. Hogan's Expert Testimony**

     A.     Proposed Opinions

Defendants challenge EEOC's hospitality industry expert and seek to preclude him from testifying at trial, but they do not argue that he should not be qualified as an expert. Thus, the Court presumes he is qualified as an expert. In addition, the Court concludes that Mr. Hogan's proffered testimony has "a reliable basis in the knowledge and experience of his discipline." Daubert, 509 U.S. at 592. However, for the reasons explained below, the Court precludes his testimony.

The Court first addresses Mr. Hogan's proposed opinions. In evaluating his opinions, the Court reviewed the briefs, Mr. Hogan's qualifications (Doc. No. 89-1), his resume, his proposed testimony, the materials he reviewed, and any pertinent exhibits attached to briefing. (Doc. No. 89-1, at 1-15; Doc. No. 115-1.) Mr. Hogan includes a number of subparagraphs under seven primary opinions, but the Court does not summarize all of his proposed testimony and observes that some of his opinions are overlapping and repetitive. (*See* Doc. No. 89-1, at 3-7.)

The Court summarizes Mr. Hogan's proposed opinions or testimony as follows:

(1) a hotel is a public business, and the innkeeper owes a duty to reasonably assure the safety and security of its employees; defining reasonable care as requiring innkeeper to correct known hazards or hazards that could have reasonably been foreseen (Doc. No. 89-1, at 3);

(2) it was not an unsafe condition for Ms. Abdullah to work in the housekeeping and/or laundry departments at Elegante Hotel while wearing a hijab; wearing a hijab inside a uniform, etc. was not violative of Defendants' safety policy (Id.);

(3) there was no safety issue at Elegante Hotel for employees who worked in housekeeping or the laundry related to wearing a head covering, including a hijab or bona; accommodation by the hotel required little or no cost.  Mr. Hogan also opines that his personal inspection of the Elegante Hotel laundry room, guest rooms, and other work areas revealed no equipment that would implicate safety concerns; head coverings to address long hair and other non-traditional hair, or no hair at all, would not raise safety concerns at the hotel (Id.);

(4) allowing an individual to wear a hijab that was pinned in a certain way required little or no accommodation from Hotel Elegante (Id., at 4);

(5) Ms. Abdullah was able to wear a hijab with a hotel uniform at a hotel at which she was subsequently employed, without any accommodation; the uniforms used at that hotel are a "low cost accommodation" (Id.);

(6) it is highly unlikely that an individual wearing a hijab would have an accident while working in housekeeping or the laundry (Id.);

(7) Mr. Hogan refers to discussions with the other hotel's manager who stated in his 30+ career he did not recall any incidents when anyone in housekeeping or the laundry had an accident with equipment (Id.);

(8) it is not an issue of safety to claim a head covering or hijab would become somehow entangled in a refrigerator or microwave, appliances that do not have a record of safety incidents and that employees use on an every day basis in their homes (Id.);

(9) the manager and executive housekeeper at the Elegante hotel were insufficiently trained at the time of this incident and did not have the knowledge to understand the safety factors regarding the wearing of a hijab; knowledgeable managers would have allowed Ms. Abdullah to wear a hijab or bona (Id.);

(10) Elegante Hotel's safety committee minutes reflect an inconsistency in frequency of meetings and content addressed, lack of leadership, regular poor attendance, and months without any meetings at all (Id.);

(11) Elegante Hotel could have made a reasonable accommodation to have an employee wear a hijab or bona at little or no cost and without a concern for safety (Id., at 6); and

(12) the Elegante Hotel manager and executive housekeeper were insufficiently trained in safety issues (repeats an earlier proposed opinion by Mr. Hogan) (Id., at 7).

B.    Discussion

Similar to Mr. Sidhu's proposed testimony, Mr. Hogan intends to offer expert opinions on unresolved factual issues and legal questions.  For example, he intends to testify that a hijab is not an example of loose clothing and that there was no safety issue with respect to wearing a hijab. Whether or not a hijab or loose clothing posed a safety risk is disputed.  Mr. Hogan would speculate that it unlikely that an individual wearing a hijab would have an accident while working in the hotel departments at issue.  The likelihood of an accident verges on pure guess and conjecture.  Mr. Hogan also proffers opinions on the legality of Elegante Hotel's safety policies, the legal reasonableness of its actions, and the legal sufficiency of hotel staff training.

Mr. Hogan's proposed opinions, in some instances, would apply the law to facts in dispute. For example, he intends to testify about the way Ms. Abdullah was wearing or could wear a hijab and that there was no safety issue in the use of a hijab, either with respect to Hotel Elegante's safety

policies or in terms of the hotel needing to make a reasonable accommodation.  Moreover, to the extent, Mr. Hogan wants to explain the law to the jury, his proposed testimony suffers from deficiencies similar to those found by the Court regarding Mr. Sidhu's testimony.

EEOC argues that Mr. Hogan will not tell the jury what result to reach or what the proper legal criteria are for purposes of instructions on the law.  (Doc. No. 115, at 6.)  Instead, Mr. Hogan would testify that he visited Elegante Hotel, visited a comparable hotel (that hired Ms. Abdullah), and that he researched the use of a hijab and believes there is no legitimate concern that such a head covering would impact safety issues at the hotel.  All of this proposed testimony can be introduced by other witnesses, if allowed, including testimony by Ms. Abdullah herself, with respect to her employment at the other hotel.

Similar to the reasoning set out *supra* in relation to the decision to preclude testimony by Mr. Sidhu, the Court finds that allowing Mr. Hogan to testify about the facts he has determined and his opinions as to whether or not an accommodation needed to be made would usurp the role of the fact finder and the Court.  The jury can hear and evaluate the evidence in terms of whether Ms. Abdullah's hijab created an unsafe condition at work or violated Elegante Hotel's policies.  The fact finder also may hear testimony, if permitted, about the presence or absence of safety issues for other employees at the Elegante Hotel who wore head coverings.

The Court will instruct the jury on the law with respect to the required elements of the claim, as well as related legal principles, including reasonable accommodations and what was required. The jury can apply the law to the evidence to determine if Elegante Hotel needed to make a reasonable accommodation, if it offered any sort of accommodation, and whether Ms. Abdullah terminated the "interactive back-and-forth" process.  Equally true, the fact finder can decide from the evidence presented whether Elegante Hotel's manager or executive housekeeper were adequately

trained, if that is a fact at issue.  The jury also can review evidence, if admitted, in relation to

Elegante Hotel's safety committee meetings.

      In other words, Mr. Hogan offers opinions or testimony that address matters either within

the jury's common sense ability to determine or the proposed opinions intrude on the Court's duty

to provide instruction on the pertinent legal standards.  The Court concludes, therefore, that Mr.

Hogan's proposed testimony is not sufficiently "relevant to the task at hand" and that it would not

be helpful in assisting the jury to determine facts in issue.  Fed. R. Evid. 702.

      In addition, the Court finds that allowing Mr. Hogan to provide the proposed testimony

would usurp the jury's role by advocating a certain result the jury should reach.  This is not allowed.

While the "ultimate issue rule was abolished by Fed. R. Evid. 704, Rules 701 and 702 still require

that expert opinions be helpful to the trier of fact.  Fed. R. Evid. 704, Advisory Committee Notes

(1972).

      In sum, the Court precludes Mr. Hogan's proposed opinions and testimony on grounds that

they are not sufficiently relevant or helpful to the jury.  Fed. R. Evid. 702.  In addition, any minimal

probative value in Mr. Hogan's proposed testimony is outweighed by dangers of unfair prejudice,

confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence.  Fed. R. Evid. 403.

      The Court recognizes that "an expert is permitted wide latitude to offer opinions" (Doc. No.

115, at 5), but the Court has wide latitude in exercising its discretion to admit or exclude expert

testimony.  *See, e.g.,* Smith, 214 F.3d at 1243.  In exercising its wide latitude in its role of

gatekeeper, the Court concludes that none of the housekeeping expert, Mr. Hogan's, testimony is

necessary to assist the jury in determining the facts in issue.  Therefore, the Court grants Defendants'

motion and precludes Mr. Hogan from testifying at trial.

19

**<u>Conclusion</u>**

Based on the foregoing reasons, the Court grants EEOC's motion to exclude expert testimony by Mr. Sidhu's (Doc. No. 80) and grants Defendants' motion to exclude expert testimony by Mr. Hogan (Doc. No. 89).  Neither expert is permitted to testify at trial.

IT IS SO ORDERED.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge